# CASES DETERMINED

BY THE

# SUPREME COURT

OF THE

## STATE OF MISSOURI

AT THE

## APRIL TERM, 1903.

---

### THE STATE v. MEYERS, Appellant.

Division Two, May 19, 1903.

**Officer:** ASSAULT ON PEACEABLE TRAVELER: ASSAULT IN RETURN BY COM-
PANIONS: COMMON DESIGN. A police officer has no right to order one-
standing peaceably on the sidewalk and who is violating no law, to
"move on," and on his refusal, to lay his hands on him and shove him
or strike him or nudge him. And if he does these things and indi-
cates that he is about to strike the other, the defendant, with his-
club, the defendant is thereupon justified in seizing him about the-
waist and holding him to prevent him from doing so, and if while
he does that his companion beats the officer with his club which
has fallen to the ground, the defendant is not chargeable with the-
beating, unless there is some evidence to show that it was the result
of a common felonious design between him and the companion who
did it, and there being nothing in these facts or any others in-
the case to show such common design the defendant should be dis-
charged. The unjustifiable conduct of the officer did not excuse the-
assault of the companion, but that assault being the voluntary and
independent act of the companion, defendant can not be punished
therefor.

(352)

Appeal from St. Louis City Circuit Court.—*Hon. Walter B. Douglas,* Judge.

REVERSED.

*S. S. Bass* for appellant.

(1)   The court erred in failing to instruct the jury for common assault, because there was no evidence whatever that the club used was a deadly weapon. It was not used upon and about a vital part on the body of the prosecuting witness, and in such a way as was likely to produce death.   State v. Schloss, 93 Mo. 361; 2 Bishop Crim. Law, sec. 681.   (2) The court erred in giving the first, second, third, fourth and fifth instructions to the jury, for all of those are predicated on the theory that defendant Meyers was responsible for what Rackaway did; that they were acting in concert, and with common intent, as conspirators, and there is absolutely no evidence in the record upon which to base such instructions.   1 Bishop New Criminal Law, secs. 633, 643; 1 Wharton Criminal Law (10 Ed.), sec. 211a; State v. Hickam, 95 Mo. 322; State v. Savage, 18 Fla. 909; Clem v. State, 33 Ind. 418; State v. Farr, 33 Iowa 553; People v. Knapp, 26 Mich. 112; Rex v. Collison, 4 C. & P. 565; Rex v. Leonard, 1 Russell & Grey 98; State v. Orrick, 106 Mo. 111; State v. Walker, 98 Mo. 95; State v. Valle, 164 Mo. 551.   (3) The court erred in refusing to instruct the jury, as prayed by defendant, on the right of defendant to resist an assault by an officer when not making an arrest.   It was the duty of the court to give such instructions even without request. State v. Albrecht, 144 Mo. 638; State v. Duncan, 116 Mo. 298; State v. Clayton, 100 Mo. 516; State v. Hayes, 89 Mo. 262.

*Edward C. Crow,* Attorney-General, and *C. D. Corum* for the State.

Vol 174 mo—23.

(1)    The State offered evidence tending to show that defendant, Rackaway, used the patrolman's club and began to strike and beat the prosecuting witness with the same. The defendant objected to this evidence; but it is entirely competent for the State to show any act of the co-defendant, Rackaway, during the prosecution of the common enterprise. In such cases the acts of one defendant are admissible against all. State v. Ross, 29 Mo. 32. (2) The defendant asked and the court refused three instructions. The general purport was that a police officer of the city of St. Louis has no authority to compel any person, who is standing upon a public street, in a quiet and peaceable manner, to move or go away, and if such person fails to obey such command that a policeman has no right whatever to assault such person, and that such person has the right to resist force by force and meet violence with violence, and to use such means as are necessary to preserve life or prevent great bodily harm from being inflicted upon him. But the court, in the fifth instruction given on behalf of the State, advised the jury that if they found from the evidence that the prosecuting witness struck defendant without attempting to arrest him and that defendant Meyers resisted the officer and held his arms in order to prevent himself from further blows from such officer, then they should find defendant Meyers not guilty. It seems that this instruction favorably complied with the law. If the police officer was not endeavoring to arrest the defendant, and was not acting in his official capacity of police officer, then the defendant had the undoubted right to resist in the same manner and to the same extent as if the officer had been a private individual. The law does not throw around an officer its special protection, except while engaged in the performance of some official duty, and by this instruction the jury were so advised. State v. Duncan, 116 Mo. 312; State v. Clayton, 100 Mo. 521.

GANTT, P. J.—This is a prosecution for an assault with intent to kill, with malice aforethought. The prosecuting witness is William A. Dempsey, a member of the police force of the city of St. Louis.

The indictment is in the ordinary and approved form.

The arraignment was regular and a plea of not guilty entered.

The facts developed on the trial are substantially the following:

On the night of the twenty-sixth of October, 1901, Dempsey, who was a policeman in the Fifth district, and whose beat was from North Market to Chambers and from Broadway to Tenth street, about midnight, was on his way to the office to make his midnight report and when he reached the northwest corner of Ninth and Clinton streets, he saw the defendant, Gus Meyers, and three other young men, Rokum or Workam, Phillips and Rackaway, standing near the corner. It is not pretended that they or either of them were making any disturbance or that they were blocking up the sidewalk.

It appears that Phillips, Workam and Rackaway had been visiting Meyers, the defendant, who lived and worked for Mrs. Finch at No. 2124 North Eleventh street, and remained until about 11:30 that night. When the three started home the defendant proposed to go with them to the corner of Ninth and Clinton and get a glass of beer. They had been to the saloon, had their beer, and had come out on the sidewalk, and defendant was rolling a cigarette, when the officer came up to them. It seems he knew the defendant and Workam, but did not know Phillips and Rackaway. As soon as the officer came up to this party, he ordered the defendant to move on. The officer says defendant replied, "Wait awhile," and thereupon he put his hand on defendant's shoulder and shoved him not very hard. "The defendant stepped back two or three steps and I dropped my hand to my side and he ran to me and

grabbed me around the waist and tried to throw me down and then Rackaway ran in and got my stick and struck me six or seven times, breaking my leg and bruising it. The defendant, Meyers, was trying to get my gun while Rackaway was striking me, but he didn't succeed." Burkhardt, a witness for the State, gave practically the same version of the occurrence except he says the officer singled out Meyers and inquired what he was doing out that time of night and ordered him to move on and then "nudged him." When the officer threw his hand to his side as if to use his club, Meyers jumped at him and pinioned his arms to prevent him striking with his club. He says Meyers, the defendant, did not take the officer's club from him.

Workam and Phillips took no part in the difficulty.

Phillips says the officer came up and said, "Meyers, you get out of here," and pushed him. Meyers started off and the officer followed him and Meyers turned around and grabbed him and threw him down and Rackaway beat him over the legs with the club which the officer had dropped. Heard someone say, "Watch the gun," but didn't see the officer's revolver.

Officer Flood testified to arresting defendant and taking him in a patrol wagon to the station. On the way down he clubbed the defendant. Split his ear and bruised him over the head to such an extent that he had to be taken to the dispensary twice for treatment.

On the part of defendant, Rackaway testified they had a drink of beer and had come out on the sidewalk when the officer came up. He said, "Meyers, what are you doing around here?" Meyers said, "Nothing." The officer then said, "Get to hell away from here." Meyers said, "Wait, let me roll a cigarette," and at that the officer shoved him, and Meyers caught him by the elbow of his coat, and the officer hit him with his club over the head. They clinched and fell.

Rokum or Workam corroborated Rackaway in every substantial detail.

The defendant offered evidence as to good character as a peaceable and law-abiding man and of industrious habits.

At the close of the evidence the defendant prayed the court to give the three following instructions, which the court refused and defendant saved his exceptions:

"The jury are further instructed that under the law, a police officer in the city of St. Louis, has no right, power or authority to compel any person who is standing upon a public street or highway in a quiet and peaceable attitude, to move or go away at the bidding of said officer, or to do his mere bidding, and that the officer, upon such person failing or refusing in a peaceable way to obey him, has no right whatever to assault, beat or strike such person, and such person has the right to resist force by force, meet violence with violence, and to use all the means necessary to preserve his life, or to prevent great bodily harm from being inflicted upon him, even to the extent of taking the life of his assailant, whether he be an officer or private citizen.

"The court instructs the jury, that if they believe and find from the evidence that the defendant, Gus Meyers, was standing on the corner of Clinton and Ninth streets at the side of or near Hannibal's saloon, on Clinton and Ninth streets, in the city of St. Louis, Missouri, on the night of the 26th day of October, 1902, and that he was acting in a quiet and peaceable manner, and that he was assaulted, shoved or struck by the policeman, Dempsey, then he, defendant, had the right in law to resist said assault or battery, by such means and in such manner as was necessary to repel his assailant.

"And the jury are instructed that said Dempsey, although a police officer of said city of St. Louis, with authority to make arrests for offenses against the law, had no right to assault, or beat, or strike, or shove the defendant Gus Meyers, if he, the defendant, was conducting himself in a peaceable and law-abiding manner.

"If the jury further believe from the evidence, that defendant Gus Meyers was standing upon the sidewalk, on the 26th day of October, 1901, at Clinton and Ninth streets, near Hannibal's saloon, in the city of St. Louis, Missouri, and that he was conducting himself in a peaceable and quiet manner, and that the policeman, Dempsey, ordered and commanded him to move on, or to move and go away, and defendant failed or refused to obey him, and that thereupon the said officer, Dempsey, assaulted defendant or struck him with his hand or with a club, or shoved him, and that the defendant then struck said Dempsey and knocked him down, then such act was in the nature of self-defense on the part of defendant, and is in law justifiable."

The court of its own motion instructed on felonious assault with malice aforethought and felonious assault without malice, the liability of all persons for the criminal act of one where they act with a common intent.

Also the following:

"5. If you believe and find from the evidence, that the prosecuting witness, officer Dempsey, struck defendant Meyers without attempting to arrest him, and that defendant Meyers seized the officer and held his arms in order to protect himself from further blows from said officer, and that he was not acting in concert with the person who beat the officer with the patrolman's club, if you find from the evidence that any one did beat the officer with the patrolman's club, then you will find defendant Meyers not guilty; but if on the other hand, you believe and find from the evidence, that defendant Meyers held the prosecuting witness while he was beaten with a patrolman's club, by some person acting in concert with said Meyers with a common intent, then the fact that the officer first struck him, if you believe from the evidence that he did strike him, is no excuse for such action, on the part of defendant."

State v. Meyers.

In the light of the uncontradicted evidence there was manifest error in refusing the instructions which the defendant asked.

The evidence on the part of the State discloses that defendant was violating no law of the State or ordinance of the city.

The officer had no right to order him in the circumstances "to move on," and upon his failure to obey, to lay his hands upon him and shove him, or, as some of the witnesses say, strike him or nudge him.

And when, as the State's evidence established, the officer indicated he was going to strike him with his club, the defendant was fully justified in seizing him and preventing him from striking him.

The court's fifth instruction clearly indicates that the circuit court so interpreted the testimony, but the court conceived there was sufficient evidence of a common felonious purpose on the part of defendant and Rackaway to justify it in submitting to the jury this common intent, and if found, to hold defendant for the act of Rackaway in striking the officer with the latter's club which had fallen to the sidewalk.

We have searched this record diligently for testimony which would justify the court's modification of its instruction number 5, and have been unable to find a scintilla of evidence to authorize it. There is not a word tending to show any pre-arrangement between Rackaway and defendant to assault the officer. There is no testimony of previous ill will on the part of either toward the officer. At no time during the scuffle between the defendant and the officer, did the defendant call upon Rackaway for assistance. His efforts were all directed to a prevention of injury to himself, a threatened injury not provoked by himself.

The action of Rackaway was of his own independent volition, for which in the light of the whole evidence, defendant was in no manner responsible. He was not holding the officer to enable Rackaway to beat him but

solely for his own protection from assault by the officer. Because Rackaway voluntarily assumed the role of defender and brutally beat the officer is no reason why defendant should be punished for his own unquestionable right to defend himself. It may be justly conceded that Rackaway bore no such relation to defendant as would justify his assault upon the officer and still it is a *non sequitur* to hold defendant for Rackaway's unjustifiable conduct. While the officer was clearly in the wrong in his assault upon defendant, it did not justify Rackaway in beating him and breaking his leg, but Rackaway, according to his evidence, was the offender as between himself and the officer, and not the defendant. As there is practically no conflict in the testimony and it is apparent that a new trial under proper instructions could only result in an acquittal of defendant, no good can result in remanding the cause for a second trial, and accordingly the judgment is reversed and the defendant discharged. All concur.