THE STATE v. ERNEST RUCK, alias JOHN MIL-
LER, alias THE SOLDIER, alias WHITEY, Ap-
pellant.

**Division Two, March 6, 1906.**

1. **INSTRUCTIONS: Copied in Transcript: No Calls or Excep-
tions.** Where there is no call in the bill of exceptions for in-
structions given and refused and they are not copied into the
bill of exceptions noted, the clerk is not authorized to copy
them into the transcript, and if he does so they will not be
considered on appeal.

2. **ASSAULT WITH INTENT TO KILL: Deadly Weapon.** The
statute does not require that the assault should have been
made with a weapon deadly *per se*, but "with a deadly weapon,
or by any other means or force likely to produce death or
great bodily harm, with intent to kill."

3. ———: ———: **Beer Bottle: Question for Jury.** It is for the
jury to determine whether a heavy quart beer bottle, the size
but not the weight being shown, in the hands of a powerful man,
was likely to produce death or great bodily harm, when aimed
at a vital part of his victim's body, at a time when he was off
his guard and not anticipating an assault.

4. ———: ———: **Intent.** The intent with which defendant struck
his victim on the side of the head with a heavy quart beer
bottle is for the jury to determine from all the circumstances.
But in this case there was abundant evidence outside of the
vicious blow itself to prove the intent to kill the prosecuting
witness.

5. ———: ———: ———: **Strike: Accomplices: Facts.** The de-
fendant was brought from Chicago to St. Louis to assist in
a teamsters' strike, and on arrival was placed by the mana-
gers of the strike on the pay-roll as an "organizer" at $6.50
per day, and told that his duties would be to "knock the non-
union drivers off the wagons, and to get out and put them in
the hospital." The prosecutor was a non-union carriage driver,
and on the night of the assault had carried two men to a
certain house, and while he was waiting there for their return,
the servant told him he need not wait longer and asked him
his charges, and being told the amount went into the house
for the money, and thereupon the driver got off of the car-
riage and went up the steps to receive the money, and while
waiting there defendant came up the steps, and the driver sup-

State v. Ruck.

posing he wished to enter the house stepped aside, and immediately defendant, without saying a word, struck him upon the side of the head with a beer bottle, and then three other men, who had been brought from Chicago for the same purpose, came up, and began to throw beer bottles at him and one of them struck him over the eye, inflicting a deep gash. The driver drew his pistol and fired, wounding defendant, who was captured, identified, and confessed that he and the three men had agreed that they go and assault this particular driver. *Held*, that the four men were accomplices, and this evidence was sufficient to support a finding of the jury that their intent was to kill the driver, and not merely to commit a common assault.

6. ——: ——: ——: ——: Accomplices: Conspiracy: No Charge. It is competent to prove that others not indicted conspired with defendant to commit the deadly assault, and were present and took part therein. Nor is it necessary, for such proof to be admissible, that the indictment charge that the crime was jointly committed by defendant and others.

7. ——: Evidence: Weapon on Accomplices. Evidence of similar weapons found on the persons of non-indicted accomplices, arrested a few moments after the assault, is competent against defendant.

8. IDENTIFYING PRISONER. It is not error to require the defendant to stand up in the courtroom in order that he may be identified by the State's witnesses.

9. CARRYING OF PISTOL. It is not error to permit the assaulted non-union driver to testify that he was carrying a pistol because he was expecting an attack in connection with the teamsters' strike, then on, but it was wholly unnecessary for him to explain why he was carrying the pistol, for he was not on trial for that offense.

10. DESCRIBING WEAPON. The inability of the State to produce the particular bottle with which defendant made the assault is no reason why the assaulted person may not describe the bottle. The fact that he did not stop and secure the bottles after the assault is no objection to such evidence.

11. OBJECTION: Immaterial. An objection that certain proferred evidence is immaterial, with no more, amounts to no objection at all.

12. IDENTIFYING ACCOMPLICES. It is not error for the court to require defendant's accomplices in the deadly assault to be brought into court to see if the assaulted person can identify them.

194 Sup—27

13. **ASSAULT: Intent: Other Weapons: Distinct Crime.** Evidence that other weapons of a different kind were found in defendant's room after his arrest, as defendant stated they would be, and that he and his accomplices had gone to the woods to cut sticks with which to make sling-shots and bean-shooters, with which they proposed to shoot through carriage windows, etc., was competent, in connection with his confession that his assault upon a driver was made in pursuance of a common purpose to "slug" non-union drivers, as tending to establish the motive and intent of the assault, and was not incompetent as tending to prove another distinct crime.

14. **CONFESSION: Threats: Testimony of Defendant.** Testimony of the defendant, made to the court in the absence of the jury, that he made his confession through fear and violence, does not overcome the prima-facie case of the officers and others that it was entirely voluntary. And its prima-facie voluntary character is not overcome by a showing that threats and duress were used with his companions and accomplices, in his absence, of which he had no knowledge at the time he confessed.

15. **REMARKS OF STATE'S COUNSEL: Failure of Witnesses to Testify.** The statute does not mean that the counsel for the State, if evidence of the State is uncontradicted, may not allude to it as undisputed and undenied. Such argument cannot be construed to be a comment on defendant's failure to testify. Especially should this be the ruling where such statement has reference to the general result of what the evidence shows, and not to one specific part thereof, for then a statement that the evidence was undisputed and undenied cannot be construed as a reference to defendant's failure to testify. [Distinguishing State v. Snyder, 182 Mo. 523.]

Appeal from St. Louis City Circuit Court.—*Hon. Robert M. Foster,* Judge.

AFFIRMED.

*Daniel L. Cruice* and *S. S. Bass* for appellant.

(1) As will be seen from the information in this case, the charge is assault with intent to kill; the gist of the offense being the intent, it is necessary for the State to not alone prove an assault, but to prove the intent with which it was committed, and the State having

wholly failed to prove the intent, and having failed to prove what the weapons used were, or to prove that they were deadly weapons, and having alleged in the information that the defendant used "large and heavy glass bottles," and the only testimony being that the defendant struck one blow with " a bottle with a long neck —resembling a beer bottle," the case can hardly be brought within the offense named. Smith v. State, 58 Neb. 531; Chavana v. State, 5 S. W. 380; People v. Roberts, 19 Mich. 401; Rex v. Thomas, 1 East P. C. 417; Rex v. Holt, 7 Car. & P. 518; Cruse's Case, 8 Car. & P. 541; Reg. v. Jones, 9 id. 258; Regina v. Ryan, 2 Mood & R. 213; Rex v. Duffin, Russ. & Ry. 364; Ogletree v. State, 28 Ala. 693; Mahr v. People, 10 Mich. 212; People v. Scott, 6 Mich. 296; Roscoe, Cr. Ev. 775, 790; 1 Bish. Cr. L., secs. 666, 667; People v. Walker, 38 Mich. 156; People v. Harris, 29 Cal. 678; Wood v. State, 34 Ark. 341; State v. Furney, 41 Kan. 115; Wagner v. People, 61 N. W. 85; Meister v. People, 31 Mich. 99; Savage v. State, 18 Fla. 409; State v. Hickman, 95 Mo. 322; People v. Keifer, 65 Cal. 232; Hadley v. State, 115 Ga. 584; State v. Meyers, 174 Mo. 360; State v. Hollanscheit, 61 Mo. 308; Wharton's Crim. Law (7 Ed.), sec. 120; 1 Bishop's New Crim. Law, par. 5, sec. 637; Meyers v. State, 31 So. 282. (2) The court erred in admitting irrelevant, incompetent, immaterial and improper testimony offered on part of the State over and against the objection of the defendant. The court, by admitting testimony as to what others than defendant did, charged defendant with responsibility for their acts which was improper. Had the information merely charged an assault, the court's ruling might have been sustained, but charging, as it did, an assault with intent to kill, the defendant could only be charged with what others did by a showing that they had an intent to kill, and that he knew of the intention. The rule is well established that if a particular intent is an essential element in the crime, an accessory, before he may be convicted,

must be shown to have participated in the intent. If a principal assault with intent to kill before the accessory can be convicted it must be shown that he had the same intent. State v. Furney, 41 Kan. 115; Wagner v. State, 61 N. W. 85; Meister v. People, 31 Mich. 99; Savage v. State, 18 Fla. 409; State v. Hickman, 95 Mo. 322; People v. Keifer, 65 Cal. 232; Hadley v. State, 115 Ga. 584; State v. Meyers, 174 Mo. 360; State v. Hollanscheit, 61 Mo. 308; Wharton's Crim. Law (7 Ed.), sec. 120; 1 Bishop's New Crim. Law, par. 5, sec. 637; Meyers v. State, 31 So. 282. (3) It was the imperative duty of the trial court to exhaustively go into the circumstances of the alleged confessions in view of the statement of defendant that he had been assaulted and threatened, and more particularly when the subject-matter of the confessions is considered. Hector v. State, 2 Mo. 166; State v. Duncan, 64 Mo. 262; State v. Patterson, 73 Mo. 695; State v. Hopkirk, 84 Mo. 278; State v. Kinder, 96 Mo. 548. (4) Improper language of prosecuting attorneys has frequently been made the basis of severe animadversion by this court. State v. Jackson, 95 Mo. 623; State v. King, 64 Mo. 591; State v. Mahly, 68 Mo. 316; State v. Lee, 66 Mo. 165; State v. Reed, 71 Mo. 200; State v. Martin, 74 Mo. 547; Cross v. State, 68 Ala. 476; Brown v. Swineford, 44 Wis. 282; State v. Ulrich, 110 Mo. 350; State v. Fisher, 124 Mo. 460; State v. Bobbst, 131 Mo. 328; Thompson on Trials, sec. 976; Thompson v. State, 43 Tex. 274; People v. Ray, 55 N. Y. S. 410; Barry v. State, 10 Ga. 522; Griffin v. State, 90 Ala. 596; State v. Proctor, 86 Iowa 698; Besitle v. State, 101 Ind. 85.

*Herbert S. Hadley,* Attorney-General, *John Kennish,* Assistant Attorney-General, *Thos. B. Harvey* and *Walter H. Saunders* for the State.

(1) An inspection of the bill shows that no instructions were called for, save the demurrer to the evi-

dence, and none were set out in said bill. Therefore, we shall discuss nothing but the demurrer, any other instructions not being before the court. (2) The court did not err in refusing the instruction in the nature of a demurrer to the evidence asked by the defendant at the close of the evidence for the State and at the close of all the evidence. Every element of the crime charged was proven by the evidence for the State, and where there is evidence tending to prove the defendant's guilt, the sufficiency of such evidence is a question for the jury. State v. Williams, 149 Mo. 496; State v. De Witt, 152 Mo. 76; Bish. Stat. Crimes, sec. 320 and n. 7. (3) The remark complained of was evidently intended by counsel and so understood by the jury to refer to the fact that the evidence for the State was uncontradicted and therefore credible, rather than the failure of the defendant to testify. The remark in question was perfectly legitimate for the purpose of calling attention to the fact that the circumstances of the assault as described by the State's witnesses were not contradicted, though several companions of the defendant had witnessed it and were alleged to have participated in it, two of whom were certainly present at the trial and were called forward and identified; and one of them was a companion slugger of this defendant. According to defendant's confession, he, Ryan, and Kelley constituted the slugging committee sent down from Chicago, and Ryan was one of the assailants pursued by Rutherford into the officers' arms. No case cited by the appellant or to be found in the reports holds that it is in violation of the statute to direct attention to the force of the fact that a defendant fails to call his friends, whom he states in his oral confession witnessed the alleged transaction. State v. Mathews, 98 Mo. 130; State v. Snyder, 182 Mo. 526; State v. Dawson, 24 S. W. 414. These cases justify the action of the prosecuting attorney in referring to witnesses present at the time of the alleged crime who fail to testify. Under the facts of the case at bar there can

be no presumption that any reference to the defendant was intended. State v. Preston, 77 Mo. 294; State v. Parker, 172 Mo. 191. (4) Several objections were made to the evidence introduced by the State. Most of such objections were based upon defendant's contention that as the information failed to charge a conspiracy, or that the crime was committed jointly by the defendant and others, it was not permissible for the State to offer evidence of the acts and conduct of such others acting in concert with the defendant in the commission of the crime charged. The law is well settled that the admissions and acts of one conspirator made and done in the furtherance of the common design are admissible in evidence against another. And to make such admissions and acts competent, it is not necessary that the parties should be jointly prosecuted or that the indictment should charge a conspiracy. 3 Enc. of Evid. 418, 421; Underhill on Crim. Evid., secs. 492-3; State v. Miller, 156 Mo. 76; State v. Ross, 29 Mo. 32; State v. Walker, 98 Mo. 95; State v. Melrose, 98 Mo. 594. (5) It is also complained that the court should have excluded the weapons found in the grip or satchel of the defendant and in the room occupied by him. The evidence was perfectly competent, (a) because said weapons were referred to in, and made a part of defendant's confession, in which he admitted their possession and his obtaining of them and the use to which they were to be put, which were for assaults upon scab drivers and their carriages, the identical character of the offense for which he was being tried. Their possession therefore corroborated his confession. (b) And the character of the weapons, especially the slungshot and the clubs, tended to corroborate the motive for the assault and the nature of his employment, to-wit, as a slugger; but, particularly, they tended to show that the intent of the assault in question was to kill; for said weapons were deadly, and were provided for the purpose of making the assaults which he had been hired to make, one of

which was the one under investigation in this case. The same motive that inspired the procurement of said weapons inspired the assault on Rutherford. Defendant's objection is urged on the ground that the weapons were not found in his possession until nearly a month after the assault in question. Time is not of the essence of such evidence. Possession of tools is always competent to show the nature of one's employment. (6) The intent that the defendant and his accomplices had when they made the assault was a question of fact for the jury, and they found that the intent was to kill. And there was abundant evidence to sustain this finding. Throwing a large rock at a person will sustain a charge of assault with intent to kill. State v. Jump, 90 Mo. 171. And an intention to kill may be inferred from striking one across the face with a piece of gas pipe. State v. Drumm, 156 Mo. 216. The authorities amply sustain the proposition that whether the used weapon was a dangerous or deadly one is a question of fact for the jury, and that the intent to kill may be inferred by the jury from all the circumstances. Bishop on Statutory Crimes (3 Ed.), sec. 320, n. 7; 2 Bishop's New Crim. Law, secs. 740-1; 1 McLain's Crim. Law, secs. 274-5. The specific intent is not to be presumed from the act merely, but may be inferred from all the facts. Abbott's Trial Brief (Crim. Causes) (2 Ed.), pp. 677-8; State v. Doyle, 107 Mo. 36; State v. Musick, 101 Mo. 260.

GANTT, J.—At the April term, 1904, of the circuit court of the city of St. Louis, the assistant circuit attorney filed an information, charging the defendant, Ernest Ruck, with the crime of assault with intent to kill on purpose and with malice aforethought, upon one Basil Rutherford, at said city, on the 23rd day of February, 1904. The defendant was duly arraigned, and entered his plea of not guilty. At the same term he was put upon his trial before a jury and convicted and his punishment assessed at two years in the penitentiary.

Motions for a new trial and in arrest of judgment were filed, heard and overruled and exceptions saved, and thereupon the defendant was sentenced in accordance with the verdict, and from that sentence appealed to this court. On the trial no evidence was offered on behalf of the defendant, and the testimony on the part of the State tended to prove the following facts:

"During the months of January and February, 1904, in the city of St. Louis, the union carriage and hack drivers were engaged in a general strike. Thomas Wand was then the proprietor of a livery stable in said city and, on account of the strike, his carriage drivers had quit his employ.

"Basil Rutherford, the prosecuting witness, had been in the city but a few months, and in the latter part of January, 1904, while the strike was on, accepted employment from Thomas Wand as a carriage driver. Rutherford had been solicited by the striking drivers to quit and he had been threatened, and rocks were thrown at him while engaged in his work, and because of the danger of personal violence, he was carrying a pistol to defend himself, at the time the assault charged in the information was committed.

"The defendant, Ernest Ruck, was a teamster, residing in Chicago, Illinois. A few days before the date of the offense charged, the defendant had been ordered by the president of the Teamsters' Union to go to St. Louis to assist in the strike. He was given fifteen dollars and went to St. Louis, reported at teamsters' headquarters, and at 1106 Franklin avenue met Innis and Rowbotham, who were in charge of the strike. There he was given instructions that he was to 'knock these fellows (non-union drivers) off the wagons' and to 'get out and put them in the hospital.' The defendant was placed upon the payroll of the union at St. Louis as an 'organizer,' and was paid for his work, $6.50 per day. He was not an organizer, but was employed, as stated, to 'slug' drivers who had taken the place of the strikers.

On the night of February 22, 1904, Rutherford had driven a couple of passengers to No. 2315 Chestnut street, between 10 and 11 o'clock. He was waiting in the street with the carriage to take them back to the hotel. When he had been waiting about a half an hour, the servant came to the door, informed him that he need not wait longer for his passengers and asked for the amount of his charges. The servant disappeared to get the money and Rutherford went up the stone steps to the door to receive it. While standing at the door waiting, a man whom he afterwards identified as the defendant, came up the steps, and Rutherford, thinking he was going into the house, stepped aside. Without speaking a word the defendant struck Rutherford on the head with a large beer bottle. Rutherford jumped off the steps, and three other men standing on the east side of the steps began hurling bottles at Rutherford's head, one of which struck him over the eye, inflicting a deep ugly gash in his scalp. Rutherford drew his pistol and began firing at his assailants. The four men immediately ran across the street, three of them turning and running east, and the other, the defendant, running west. Rutherford pursued the three men a short distance and until they were intercepted and placed under arrest by some policemen who had been attracted by the firing of Rutherford's pistol. Two of the men had empty bottles in their pockets when arrested and the other threw some bottles on the ground just before the arrest. The defendant Ruck escaped that night and was not apprehended until about a month thereafter. He was still in St. Louis when placed under arrest. After his arrest he made a full, voluntary confession orally, and afterwards repeated it, when it was reduced to writing, in which he detailed all the facts as to why he came to St. Louis, and the purpose of his coming, to-wit, to participate in the strike as an 'organizer,' to slug 'scabs' or non-union hack drivers, having been sent down from Chicago on that mission by C. P. Shea,

president of the teamsters' union, upon a salary of $6.50 per day. In his confession he stated that after assaulting Rutherford he ran, and as he ran Rutherford shot him through the arm, and he exhibited to the police officers at the police headquarters the wound in his arm, and said he had the wound treated on the night of the assault by a doctor near 14th and Franklin avenue. This statement of his was corroborated by Dr. Sturhahn, who identified the defendant on the stand and testified to dressing the wound that night. In regard to the assault on the night of the 22nd of February, the witness testified that defendant said in the office of the chief of detectives in St. Louis, after his arrest, that he and three men who were with him on the night of the assault had been at Crowley's saloon, and chief Desmond asked him where Crowley's was, and he said, ''Way out that way (indicating) : I do not know just what street it is, and we came in from there;'' that as they came down Chestnut street, some one of their crowd proposed to go over and assault this carriage driver (the prosecuting witness in this case); the carriage was standing in front of 2315 Chestnut. He said he had some bottles in his pocket. The driver was standing in the door. He said, 'we slugged him and he took a shot at me;' he said he started up the steps where the prosecuting witness was standing, and struck him with one of the bottles, when Rutherford commenced shooting at him and shot him in the arm; he pulled up his sleeve and showed where he was shot. The other three parties with the defendant on that night were Michael Ryan, Frank C. Gettings and Thomas McLespy. Ryan and Kelly also came down from Chicago, according to defendant's confession, to engage in the strike, and they were identified at the trial as two of the parties that were with the defendant that night.''

Various errors have been assigned for the reversal of the judgment, and further facts in regard to the admissibility of evidence and the rulings of the court dur-

ing the trial, will be noted in the examination of the errors assigned by counsel for the defendant.

I.   Preliminary to a discussion of the various points raised and argued by counsel, it must be noted that counsel for the State challenge the correctness of the record and sued out a writ of certiorari to correct the transcript certified to this court by the clerk by striking therefrom the recital that certain instructions were given by the court, and the copy of the same in full in the transcript, for the reason that the original bill of exceptions on file in the clerk's office in this cause neither contains nor calls for the aforesaid instructions, and, therefore, the same were improperly and improvidently copied into the transcript certified to this court, and formed no part of the true record of this case on this appeal. The writ was granted, and by virtue of the statute, section 817, Revised Statutes 1899, in order to properly determine the question thus raised, the clerk of the circuit court of St. Louis was directed to forward to this court the original bill of exceptions filed in this cause by the defendant, which he did. The original bill shows that when the evidence on the part of the State was all in, and the State had rested, the following occurred: ''Thereupon the defendant offered the following instructions in the nature of a demurrer to the evidence offered by the plaintiff, to-wit: (here copy), which said instruction the court overruled, to which ruling of the court the defendant by counsel duly excepted then and there at the time. . . . Defendant offered no evidence. The above was all the testimony offered.''   There is nowhere in the bill then any recital or statement that ''thereupon the court instructed the jury,'' and setting out the instructions, nor is there a statement that ''thereupon the court gave the following instructions (here the clerk will copy the same),'' nor is there anywhere in the bill any instructions requested by the defendant and refused by the court, except the instructions already noted in the nature of a demurrer to the

evidence.    Section 866, Revised Statutes 1899, as
amended in 1885, provides: "It shall not be necessary,
for the review of the action of any lower court on ap-
peal or writ of error, that the motion for new trial, in
arrest of judgment, or instructions filed in the lower
court, shall be copied or set forth in the bill of excep-
tions filed in the lower court. Provided, the bill of ex-
ceptions so filed contains a direction to the clerk to copy
the same, and the same are so copied into the record
sent up to the appellate court." Under this section
it was perfectly competent for the defendant in his bill
of exceptions to have stated that the court gave certain
instructions and to have directed the clerk to insert
them in the bill of exceptions, but it is equally clear that
unless the defendant in making up his bill of exceptions
did call for the instructions, given and refused, it was
not competent for the clerk of his own accord to make
the instructions a part of the record, or a part of the bill
of exceptions.    It is for a party appealing from the
judgment of a trial court to save his exceptions to such
matters as do not constitute a part of the record proper
and incorporate them in his bill of exceptions.    This
whole matter was considered in the case of Ross v.
Railroad, 141 Mo. 390.  It is plain from that case that
unless the instructions given and refused were duly di-
rected to be copied into the bill of exceptions, or were
copied in full into the original bill of exceptions and
exceptions made and saved to the action of the court
in giving and refusing the same, the bill cannot be
amended by the oral testimony of the witnesses after
the term of court at which the case is tried, or the term
at which the bill is signed by the judge.    As the orig-
inal bill of exceptions on file in the office of the clerk
of the circuit court did not contain the instructions
and there was no direction in the bill calling for
their insertion by the clerk, the instructions constituted
no part of the record in this case, and the mere fact that
the clerk of his own motion has seen fit to copy them

into the record, does not make then a part of the record, and therefore the action of the court in giving instructions for the State and refusing instructions asked by the defendant, save and except the one instruction in the nature of a demurrer to the evidence, cannot and will not be reviewed by us in the diposition of this appeal.

II.   We proceed then to the first assignment of error urged by the defendant in his brief and argument, to-wit, that the verdict of the jury is against the law and against the evidence.   To sustain this proposition, it is earnestly insisted that the gist of the offense with which defendant is charged, is the intent with which it was committed, and that the State wholly failed to prove this specific intent, to-wit, the intent to kill the prosecuting witness.   As a corollary to this proposition it is argued that the State wholly failed to prove that the weapons used were deadly weapons, and having alleged that the defendant used "large and heavy glass bottles," and the only testimony being that the defendant struck the prosecuting witness with a bottle with a long neck resembling a beer bottle, the proof did not sustain the charge of the offense named.   Many cases are cited from the various appellate courts, to the effect that the particular intent charged must be proved to the satisfaction of the jury.   It seems to be argued also, inferentially, that because the defendant did not say anything before he struck Rutherford on the side of the head with a beer bottle, the intent was not established.   We are wholly unable to accede to the contention of the learned counsel for the defendant. Of course it was necessary to satisfy the jury under the information that the assault was committed with intent to kill, and the jury by their verdict have distinctly found that such was the intent of the defendant. On this appeal it is not the province of this court to disturb the verdict and finding of the jury, unless there was no substantial evidence upon which the finding could be based.   In the

consideration of whether there was sufficient evidence to justify the jury in its conclusion, not only the nature of the weapon but the physical strength of the person wielding it, the fact that the prosecuting witness was entirely off of his guard, and not anticipating an assault, the nature and character of the blow, and the fact that four men were united in the assault on one man, and the vicious motive inspiring the assault, must all be taken into account. The statute does not require that the assault should have been made with a weapon deadly *per se,* but its language is, ''shall assault or beat another with a deadly weapon, or by any other means or force likely to produce death or great bodily harm, with intent to kill,'' etc. It is said by the defendant that the weight of the bottle used in making the assault was not proved. The size was proved, but the weight was not shown, but it was for the jury to say whether a heavy quart beer bottle, in the hands of a powerful man, was not likely to produce death or great bodily harm when aimed at a vital part of the victim's body. As said in State v. Drumm, 156 Mo. 216, ''such things as all persons of ordinary intelligence are presumed to know, are not required to be proved,'' and the size and heft of a quart beer bottle is a matter of such common knowledge that it was entirely unnecessary to prove its weight in order to enable the jury to find that it, as used by a man of the size and weight of the defendant, was a deadly weapon. Whether it was a deadly weapon was a question of fact for the jury, and the intent with which the defendant used it on the prosecuting witness was for the jury to find from all the circumstances. And in this case there was abundant evidence, outside of the vicious blow itself, to prove the intent to kill the prosecuting witness. Two of the men engaged in the assault, Ruck and Ryan, were two of a committee whose sole mission in St. Louis at that time was to slug and assault non-union hack drivers, and had been sent from Chicago for this specific purpose, and paid at the

rate of $6.50 per day. And the evidence tended to show that they were peculiarly fitted for the work for which they were imported into this State. The jury were well justified in reaching the conclusion that these men who would accept employment to do such work, and come all the way from Chicago to St. Louis to engage in it, would not hesitate to kill one of their victims, or in the language of the defendant himself, "put him in the hospital," nor was the jury left in any doubt as to the intent with which the defendant and his associates went across the street to the door where the prosecuting witness was waiting for the fares which his passengers owed him. Officer McCarthy testified that the defendant said that as they came down Chestnut street, one of the party proposed to go over and assault the carriage driver, and they all went together for that purpose, as was abundantly shown by the fact that they all engaged in throwing bottles at him, and in addition to the wound on the head which defendant inflicted, one of the others struck him over the eye, and cut a deep gash, and so a common intent could be easily inferred from their expressed purpose and their combined assault on the prosecutor, and the facts fall clearly within the rule announced in State v. Kempf, 26 Mo. 430, in which Judge RICHARDSON, speaking for the court, said: "It is of course not necessary to prove any formal or expressed agreement or intent; but it may be inferred from circumstances, and is a question of fact for the jury." And the evidence was amply sufficient to show that all four of the assailants participated in the intent and that they were all actuated with the same common and unlawful purpose. The facts in the case of State v. Meyers, 174 Mo. 352, are wholly dissimilar from those indicated by this record. It would have been a most illogical conclusion for the jury to have reached, had they found in the face of all these circumstances that the defendant and his associates only intended a simple and common assault.

III. It is urged that the learned circuit judge erred in admitting the testimony showing that the defendant's associates, Ryan, McLespy and Gettings, also joined in the assault immediately after defendant had dealt the prosecuting witness the blow with the quart bottle, because it is said this would be to charge the defendant with responsibility for the acts of others. The evidence is so clear that all four of these parties were accomplices in making the assault that it is too obvious for discussion almost that it was entirely competent to show what each of them did in accomplishing the common purpose. It would seem that the defendant's contention on this point is that as the information failed to charge the conspiracy, or that the crime was committed jointly by the defendant and others, it was not permissible for the State to offer evidence of the acts and conduct of such others acting in concert with the defendant in the commission of the offense charged. The law is too well settled to admit of a doubt that it is perfectly competent to prove that others not indicted had conspired with the defendant in the indictment, to commit the offense charged.

In King v. William Stone, 6 Term Rep. 527, the prisoner was indicted for treason; the evidence tended to show that the prisoner conspired with John Stone and William Jackson. The two latter were not indicted, nor was there a charge of conspiracy in the indictment; the evidence of his conspiracy was received. In Gill v. State, 59 Ark. l. c. 430, the court said: "Nor is it material, as to the admissibility of the acts or declarations of a conspirator against a defendant, whether the former [the conspirator] be indicted or not, nor what the nature of the indictment is, provided the offense involve a conspiracy" — citing Wharton's Criminal Evidence, section 700. In People v. McCane, 80 Hun l. c. 332, the court said: "It is not necessary that the co-conspirator, whose acts and declarations in furtherance of the ends of the conspiracy are offered in evidence, should be a

party to the record. It is plain that the indictment or non-indictment of the conspirator whose acts or declarations are offered against his fellow, can neither impart any quality of verity or of relevancy to such acts and declarations, nor withdraw it from him, and, hence, his inclusion or exclusion as a party to the indictment is not material.'' That case was subsequently taken to the Court of Appeals and is reported in People v. McCane, 143 N.Y.455. Judge O'BRIEN wrote the opinion in which all the judges concurred. He said: ''When a conspiracy is shown, or evidence on the subject given sufficient for the jury, then the acts and declarations of the conspirators, in furtherance of its purpose and object, are competent, and in a case like this it is not necessary, in order to make such proof competent, that the conspiracy should be charged in the indictment.'' This statement of the law on this point is reiterated by some of our most careful text-writers. [Wharton's Criminal Evidence, sec. 700; 1 Greenleaf's Evidence, sec. 111; Roscoe's Criminal Evidence (8 Ed.), p. 432; People v. Kief, 126 N. Y. 661; Goins v. State, 46 Oh. St. l. c. 463-4.] And such was the conclusion reached by all the judges of this court in State v. Kennedy, 177 Mo. l. c. 118, 164, 165; State v. Boatright, 182 Mo. l. c. 46; State v. Collins, 181 Mo. 261. [Bishop's New Criminal Proc., sec. 1248-9.]

Again, under this same head, defendant assigns as error the admission of the testimony showing that when McLespy, Gettings and Ryan were arrested by the police, a few moments after the assault, the officers found on their persons, and in their pockets, bottles. As to this, we think there can be no doubt whatever as to the propriety of this evidence. The evidence, already in, tended to prove that these three men were present and taking part in the assault upon the prosecuting witness, and the defendant had assaulted him with a bottle. These three were arrested a few mo-

ments afterwards in their flight, and it was perfectly competent to show that they were armed with the same character of weapons as that with which the assault had been committed. The fact that they were thus armed was strongly corroborative of the statement of the prosecuting witness to the officers of the character of the assault that had been made upon him and was admissible also for the purpose of identifying them as the parties who had been engaged in the assault.

As to the proposition that the court in its ruling made a comment upon the evidence, the record shows no exception taken on that ground, but we see nothing in the nature of a comment. The court simply stated the grounds of its ruling as to its competency.

Under the same head, error is alleged in permitting the prosecuting attorney to ask the prosecuting witness to look at the defendant and state whether or not he was the man he saw in Chief Desmond's office. It was clearly competent to permit the State to have the prosecuting witness identify the defendant as his assailant, and for that purpose to have the prisoner stand up, as the evidence shows he was sitting behind his counsel at the time. [State v. Gartrell, 171 Mo. l. c. 509; People v. Gardner, 144 N. Y. 119.]

Again, it is urged that it was error to permit the prosecuting witness to state why he was armed. The court permitted him to state that there was a strike on and he and his fellow hackmen (non-union) had been threatened and the drivers carried revolvers to protect themselves. While we think it was wholly unnecessary for the prosecuting witness to explain why he was carrying a weapon, as he was not on trial for that offense, we think no harm was committed in permitting him to explain that he did so because he was expecting an attack.

The mere fact also that the court permitted the witness to describe the bottle with which he was assault-

ed, and the other bottles which were found upon the accomplices of the defendant, was not error simply because the State was not able to procure the particular bottle with which Ruck, the defendant, struck Rutherford, the prosecuting witness. The witness both saw and felt the bottle with which he was struck and the fact that he did not stop and look for that bottle instead of pursuing his assailants and securing their arrest, was no objection to his evidence. Besides, when the bottle was last seen it was in the hands of the defendant, and he fled presumedly with it in his hand, and was not arrested until a month later. It was by no means a condition precedent to his description of the weapon with which he was wounded that he should have first produced the weapon itself when it was shown to have been in the hands of his assailant when he last saw it.

Equally untenable is the position of counsel as to the admissibility of the testimony as to the arrest of the defendant on the 26th of March, 1904. The only objection made to this was that it was immaterial, an objection which we have often held amounted to no objection at all.

A further objection to evidence is that the court permitted two of the accomplices, Kelly and Ryan, to be brought into court to see if the prosecuting witness could identify them as the men who were with the defendant and taking part in the assault on the night of the assault. This was entirely competent. [State v. Gartrell, 171 Mo. 510; Rex v. Deering, 5 Carr. & Payne 165; State v. Ah Chuey, 14 Nev. 79; Garvin v. State, 52 Miss. 207; People v. Goldenson, 76 Cal. 328; Com. v. Whitman, 121 Mass. 361.]

Another objection to testimony is to that of officer McCarthy as to statements made by the defendant after his arrest, to Chief Desmond, in the presence of McCarthy, Williams and others. The question was, "Did he tell you with whom or in what room he was stopping?" Ans. "Room 20." Q. "Was any state-

ment made by him as to the articles that were in that room?" Objected to, as this was a month subsequent to the alleged assault. Counsel for the State and the defendant at this point seemed to have become involved in a wrangle, but the real objection now appearing from the record seems to have been that the defendant's counsel objected to the testimony of the officer as to the statement of the defendant as to certain weapons, sling-shots, clubs, etc., which the defendant stated were in the room number 20, the only objection being that it was incompetent to prove, in connection with the statement of the defendant that when he was arrested and told the officer where he was rooming, that the officer the next day went to that room and found two clubs, some rocks, some balls of lead, sling-shots and a billy. The testimony in this connection further discloses that some of these articles were found in the defendant's valise, which he identified as his. The officer testified that the defendant stated that he and his companions got a billiard cue and cut it off, and stated that they prepared these things to assault "scab" drivers, and that he and Kelly had gone out to the woods and cut some sticks with which to make sling-shots or bean-shooters, with which they purposed to shoot through carriage windows. The billy was made of sand and shot, and was identified by defendant at Desmond's office when he was making his statement. The trial court admitted this evidence on the ground that it was corroborative of the fact that the defendant was a participant in the assault upon the prosecuting witness, and that their possession by him corroborated his confession, and of the general scheme and purpose for which defendant had come to St. Louis, to-wit, an assault or assaults upon "scab" drivers, the identical character of offense for which he was being tried. Taken in connection with testimony already introduced, the defendant's testimony or confession in evidence, there can be no doubt about the sufficiency of identification of these weapons as being the

same which the defendant had prepared, and that they were in his room where they found by the officer pursuant to his confession, and they were competent to establish the motive for the assault for which he was being tried, and as tending to show the intent of the assault to kill. It tended to prove that the same motive inspired the procurement and preparation of said weapons that actuated the assault on Rutherford. Its purpose was not to prove another and district crime, but its tendency was to establish the motive and the intent with which the assault was made, and the common scheme or plan so related to the assault for which defendant was being tried that it illustrated his conduct on the night of the assault. [State v. Bailey, 190 Mo. 282, 283, 284, and cases cited.]

IV. Again, error is assigned on the admission of the confession of the defendant. The preliminary examination by the judge as to whether these confessions of the defendant were voluntary, discloses that they were made without any threat or compulsion, and without any hope of reward. The trial court excluded the jury from the court room and heard all the evidence as to the circumstances under which the confession was made; he permitted the defendant on this preliminary hearing to testify in his own behalf. The specific objection now urged is that the learned circuit court did not hear all the evidence with reference to the duress alleged to have been used in obtaining his confession. There is no merit whatever in the claim that the defendant was not permitted to make a statement of his side of the controversy as to the confession. There is not the slightest pretense that he offered to state any other fact which could throw light upon the inquiry thus being made. But it would seem that counsel now claim that error was committed in refusing to permit Ryan and others to testify that they had been threatened, and statements extorted from them. No effort was made to show that the alleged duress over these other parties was ex-

ercised in the presence or with the knowledge of the defendant, or that these other accomplices were cognizant of any duress upon this defendant. Upon a full examination, it sufficiently appears that the confessions and admissions were properly admitted and the mere fact that the defendant testified that he made his confession through fear and violence did not overcome the prima facie case, and the testimony of the officer. Indeed, he did not offer himself as a witness, or any other testimony before the jury, to show that his confession had been obtained by promises of clemency or extorted by fear of violence. [State v. Patterson, 73 Mo. 695; State v. Jones, 171 Mo. l. c. 406-7; State v. Brennan, 164 Mo. 487.]

V. The sixth assignment of error is predicated entirely upon the assertion that the trial court erred in its instructions to the jury and erred in refusing certain instructions prayed by the defendant. As already noted, these instructions have not been made a part of the bill of exceptions, and hence they are not before us for review. It would be manifestly improper upon our part to discuss matters which are not legally a part of the record. As to the 9th point in the brief of the learned counsel, to-wit, that "the court failed to instruct the jury as to all the law covering all of the phases of the case," it is impossible for this court to determine, unless all of the instructions given by the court were incorporated in the record before us. In the absence of anything on that subject, the presumption must be and will be indulged that the instructions given were correct and covered every phase of the case.

VI. Lastly, it is insisted that the learned circuit court erred in permitting Judge Harvey, special counsel for the State, to make improper remarks in his address to the jury. To understand this point it will be necessary to note the particular statements which were objected to. In his opening statement to the jury,

State v. Ruck.

Judge Harvey, in part, said: "The strike had been in existence possibly a month, or a little more than a month, when the defendant here and two other persons, companions of his in the general enterprise, came to the city of St. Louis from Chicago. We expect to show by the evidence that they came here for the purpose and under the"—at this point, Mr. Bass, counsel for the defendant, objected to any statement of a conspiracy, or what anybody else did upon the theory of a joint assault; that it was incompetent to try the defendant upon the theory of a joint assault under the pleadings in the case. Mr. Cruice, another of the counsel, also "objected on the ground that it was improper for Judge Harvey to state that the defendant and two other persons came from Chicago to St. Louis for the purpose of assaulting and knocking off of their boxes the carriage drivers who had the temerity and hardihood to drive carriages and hacks which had been abandoned, on the ground that, if true, it would prove a conspiracy which is not charged in the information." Obviously there was no impropriety in this statement of Judge Harvey's as to what he expected to prove in regard to the joint action of the defendant and his associates in the assault and the employment and purpose which actuated them in coming from Chicago to St. Louis. We have already indicated that it was untirely unnecessary to make all the parties defendants in the one indictment or to charge them with a conspiracy. The law of this State is well settled that it was perfectly competent to show this, whether the parties were jointly indicted or not. See the cases already cited in the foregoing part of this opinion. Again, Judge Harvey in the course of his argument was recounting the evidence that one of the party with the defendant, as they came down Chestnut street that night, proposed that they "would go after the scab." To the statement "go after the scab," Mr. Bass objected. There was no force in the objection. McCarthy testified that the defendant said as they came down

Chestnut street, one of his party said, "We will go across and get that scab," or, "We will go across there and try to get him."

VII.   It is now urged that the circuit court erred in that it did not direct the jury to disregard the remarks of Judge Harvey with respect to the failure of witnesses to testify to certain propositions.   This is based upon the following state of facts: Judge Harvey in the course of his argument said, "I care not whether the harm attempted to be done is by this man himself or by the others who are with him, the effect is the same. You know without an instruction from the court that if you and I engaged in a common enterprise, and you succeeded in striking a man, and I did not, you are just as guilty as I, I just as guilty as you are. Each is an agent and confederate of the other, and each is held in the law, as you know they should be, for the acts of everyone. Here is a case that seems to me calls for the punishment that should be made to fit the crime. Here we have testimony undenied, undisputed by no living or unliving witness"—Mr. Bass: "We object to that statement under the law."   Judge Harvey, without stopping —"evidence to the fact that three men are deliberately hired and for so much money they are base enough to take the $6.50 and come here to the city of St. Louis, armed with such weapons as they see fit, for the declared purpose of knocking men off the cab boxes and 'putting them in the hospital.'   Can you conceive of any employment more dastardly than that?"   After pursuing this course of argument at some length, Mr. Bass said:   "I ask that the jury be directed not to regard the remarks of Judge Harvey with regard to the failure of witnesses to testify to certain proposition," which the court denied. It is now insisted that the course of argument of Judge Harvey in stating that the facts had not been denied, had reference to no one but the defendant.   In the first place, the first objection, if it may be so called, was, "We object to this statement under

the law.'' No reason whatever was assigned for the objection, but conceding that counsel intended to make this specific, that Judge Harvey's statement was a comment on defendant's failure to testify in his own behalf, still we think the statement of Judge Harvey cannot be reasonably construed as a reference to the defendant's failure to testify. A reading of the whole context shows that he was not discussing one specific piece of testimony as was the case in State v. Snyder, 182 Mo. 523, but was discussing the general result of the trial, as the evidence had taken a wide range, including many facts and circumstances testified to by many witnesses, and argued that this evidence was undenied and undisputed, but another way of stating that which had been shown beyond contradiction; that the facts were as he insisted they were. We think it is not fair to charge the counsel with having thus purposely and indirectly commented upon the failure of the defendant to testify, nor do we think it will do to give section 2638, Revised Statutes 1899, such a construction, that counsel for the State may not in the course of an argument, if evidence of the State is uncontradicted, allude to it as undenied and undisputed. We think, moreover, that the first objection was entirely too indefinite. Judge Harvey had made a number of statements, and Mr. Bass simply stated, ''We object to that statement under the law.'' We think it would have been difficult for the court to have pointed out the specific statement to which Mr. Bass alluded. As to the request for an instruction when Judge Harvey had concluded, along this line, directing the jury to disregard Judge Harvey's statement with regard to the failure of witnesses to testify, the court very properly refused it. To have done so would have wrought the very harm and injury of which the defendant now complains. Judge Harvey had not said that any witness had failed to testify, or that the defendant failed to testify, nor had he, as in the Snyder case, stated that only two parties were present,

one of whom was the defendant, and that the other party had testified and his statement had not been denied. There the issue was narrowed down, and but one inference could have been drawn from the statement of the prosecuting attorney, that the defendant had not denied the statement of the other witnesses when he might have done so. Whereas in this case the assertion of the counsel for the State amounted to no more than an expression of his views as to the strength of the evidence in behalf of the State in a general way, and that it had not been rebutted, or there was nothing to the contrary. We do not think that the remark attributed to Judge Harvey was a violation of section 2638, and we would not be justified in reversing the cause on that ground alone.

We have thus patiently considered every assignment of error urged in behalf of the defendant by his counsel, and neither singly nor collectively are they sufficient to show any reversible error on the part of the circuit court. In our opinion the testimony was amply sufficient to support the verdict of the jury, and the defendant has been afforded a fair and impartial trial. The judgment of the circuit court must be and is affirmed.

*Burgess, P. J.*, and *Fox, J.*, concur.