STATE OF MISSOURI, Respondent, *v.* CON. FOLEY, Appellant.

12 431
80 127|

### June 27, 1882.

1. It is improper conduct on the part of the prosecuting attorney to tell the jury in his argument, that the prisoner is a desperado, when the latter's character has not been put in issue.

2. The giving of an instruction which the jury might understand as taking from their consideration one element of the prisoner's defence, is ground for a reversal of the judgment.

3. The question whether one charged with an assault with intent to kill is guilty of a felonious intent in committing the act charged, must be determined by the facts as perceived by him.

4. One who has good reason to, and does, believe that he is lawfully resisting a felonious assault is not guilty of an assault with intent to kill.

APPEAL from the St. Louis Criminal Court, LAUGHLIN, J. *Reversed and remanded.*

FRANK D. TURNER and THOMAS D. HARVEY, for the appellant: Improper language used by the prosecuting attorney in his argument is ground for a reversal. — *The State* v. *Hopper*, 71 Mo. 429 ; *The State* v. *Mahley*, 68 Mo. 319 ; *The State* v. *Lee*, 66 Mo. 167 ; *The State* v. *Reed*, 71 Mo. 200 ; *The State* v. *Reilly*, 4 Mo. App. 395. The attempted arrest and the killing of Coffey were not justifiable ; for he had the right to resist an illegal arrest, and the arrest was illegal, unless the officer had lawful authority to make it, and executed that authority in a proper manner, and Coffey was apprised of that authority. Unless these three things concur to legalize the arrest, the killing of the officer will be but manslaughter at the most. — Rev. Stats., sect. 1826 ; 1 Bishop's Cr. Law (6th ed.), sect. 868, and cases cited ; 2 Bishop's Cr. Law (6th ed.), sect. 699 ; 1 Whart. Cr. Law (8th ed.), sect. 419 ; *The State* v. *Roberts*, 14 Mo. 144 ; *The State* v. *Green*, 66 Mo. 646. " Not only

is it essential to the rights of the citizen that he shall be required to submit to arrest only when the official character of the demand is made known to him, but it is essential to the dignity of the state that its servants should be sheltered by these official prerogatives, only when they are acting legally, and give notice that they so act.'' — 1 Whart. Cr. Law (8th ed.), sect. 419 ; *The State* v. *Roberts*, 14 Mo. 144 ; *The State* v. *Green*, 66 Mo. 646 ; *Yates* v. *The People*, 32 N. Y. 509 ; *Logan* v. *The Commonwealth*, 38 Pa. St. 265 ; *Johnson* v. *The State*, 26 Texas, 117 ; *Rafferty* v. *The People*, 69 Ill. 111.

LEWIS, P. J., delivered the opinion of the court.

The defendant was convicted and sentenced to the penitentiary for eight years, under an indictment for assault with intent to kill, on purpose and of malice aforethought, as the crime is defined in Revised Statutes, section 1262.

It appears from the record, that police officers Henley and Burke were ordered by the St. Louis chief of police to find and arrest one Coffey, on a charge of highway robbery ; that at about midnight, the officers, dressed in citizens' clothes and exhibiting none of the insignia of their office, entered a drinking-saloon where Coffey and the defendant were, and seized upon Coffey to arrest him. Coffey resisted and drew a pistol, but was so held that he could not use it. In the struggle he called to the defendant who stood eight or ten feet off, to shoot his assailants. The defendant drew his pistol and snapped it at Officer Henley, and again cocking it, fired, but missed the officer. Henley then shot at the defendant, who escaped through a back door, turned, and fired back through the door. About a dozen shots were fired. Coffey was killed, presumably by pistol-shots from one or both of the officers.

The error first complained of is, that the circuit attorney, against the defendant's objections, and without hindrance

or rebuke from the court, was permitted to use the following language in his closing address to the jury : —

"And that is the character of the man, and that is the character of the place they were going into,— actually taking their lives in their hands,— and there is no man on this jury, who would have more bravely faced what those' two men faced. I just ask you, however lion-hearted you may be, to put yourselves in their places — walking in there, into a saloon, in that part of the city, in the dead of night, face to face with two of the most terrible desperadoes of the city, to arrest one of them for highway robbery."

There is no difference, in principle or in effect, between the closing remark in the above quotation and the language of the prosecuting attorney which was strongly reprehended by the supreme court in *The State* v. *Lee* (66 Mo. 165). It cannot be more prejudicial to a defendant, in the estimation of his triers, to say that he has not a good character, and therefore does not attempt to prove one, than to say that he is one of the most terrible desperadoes in the city. The character of the defendant in this case had not been put in issue by him, and it would not have been competent for the state to prove that he bore the character of a desperado. It is no more permissible for a prosecuting attorney to state as true what the law excludes from the hearing of the jury in the way of testimony, than for him to misstate the evidence and to declare as true the very reverse of what the testimony proves. Whatever prejudice may attach to the character of desperado, and whatever influence such a reputation may have in adding probability to a charge of violence, these are weapons the use of which against the defendant was forbidden by law. In the hands of an able and earnest prosecuting attorney, it is not unreasonable to suppose them effective, if not to secure a conviction, at least to prolong the term of punishment. Still, we are not disposed to treat as sufficient ground for a reversal, what was doubtless intended and received as a mere rhetorical effort

in vindication of the officers, without any design to inflict an injustice upon the defendant.

The following instruction was given to the jury : " For all the purposes of this case, the attempted arrest, and also the killing of Coffey, were justifiable ; and if, while Henley and his companion were engaged in an effort to secure Coffey, Coffey called on the defendant to aid him in resisting the officers, and in response to such request the defendant assaulted Henley with a deadly weapon, and for the purpose of making Coffey's resistance effectual, and tried to kill him, fired at Henley, he is guilty as charged.   But if he was ignorant of the fact that Henley and his companions were officers, and had no sufficient reason for believing them such, and not for the purpose of preventing his arrest, but to protect him against a supposed wrong, he suddenly conceived the design to kill, and attempted its execution the very moment of its conception, he is not guilty as charged, but is still guilty of the lower grade of an assault to kill ; and unless he made the assault with intent actually to kill, he is not guilty of any offence."

The opening sentence of this instruction may easily be understood as taking away from the jury a most important element of the prisoner's defence.   The question of criminal intent in the shooting, as dependent upon the visible surroundings and the impression made by them upon the mind of the defendant, is the vital one in the case.   It must be determined, not by facts within the knowledge of the officers, or of others present, but by the facts, as perceived or understood by the defendant from his standpoint.   If he knew that Henley and Burke were officers engaged in making a lawful arrest, the criminal intent and malice aforethought were present in his wilful attempt to obstruct the due execution of the law.   But if, upon sufficient or reasonable grounds, he actually believed that the officers were only lawless ruffians making a felonious assault upon his friend, his act of shooting might, according to circumstances,

range from a low grade offence to absolute innocence of crime. The purposes of this case, then, as to the attempted arrest and killing of Coffey, demand, first of all, an inquiry as to which of these two conditions of mind controlled the defendant in the act committed. For the purposes of some other case, or of an inquiry concerning the responsibility of the officers only, one may express an opinion that the arrest and killing were justifiable. But to tell the jury that the proposition is true for the purposes of this case, is to tell them that the lawfulness of the arrest and killing are to be considered as settled against the prisoner, and that no hypothesis of a contrary supposition on his part can be entertained. If the court had said only that the question of justification in fact on the part of the officers was immaterial, no mischief might have followed. But to say that the jury must consider the question of the defendant's guilt or innocence in the light of an absolute and recognized justification of the officers, was, at least, misleading.

There was testimony from which it might be strongly inferred that the defendant did not recognize Henley and Burke as officers, and did not know or suspect that a lawful arrest was in progress. Williams, a witness who was present, testified that the officers were in citizens' clothes, with coat-collars drawn up and hats drawn down over their faces, so that, although he had then well known Officer Henley for many years, he did not at all recognize him. He thought that the assailants of Coffey were a "rowdy crowd." We think that the testimony admitted of a hypothesis for consideration by the jury, that the defendant was absolutely ignorant of the official characters of the attacking party, and that he acted upon a justifiable impulse, in the supposed defence of his friend. In this connection, the general doctrine is said to be, that " whatever one may do for himself, he may do for another." 1 East P. C. 289, 292, 293 ; *The Commonwealth* v. *Drew*, 4 Mass. 391. The instruction above copied should, therefore, not have stopped short with

the hypothesis which contemplated only " a lower grade of assault to kill." We do not clearly understand from the testimony whether any deadly weapon was exhibited by the officers before the defendant shot. Of course, the question of justification in the defendant would depend largely upon the apparent probability of a homicide, or of serious personal injury to be inflicted by the assailants, even if he were fully convinced that they were violators of the law.

The vice of the opening sentence in the instruction is not cured by what follows. An instruction should be consistent with itself. If the rules laid down appear to contradict each other, it will be impossible to know which one of them is accepted by the jury. Judgment reversed, and the cause remanded. All the judges concur.