BROUSTER, Respondent, v. FOX et al., Appellants.

St. Louis Court of Appeals, March 27, 1906.

1. ASSAULT AND BATTERY: Aiding and Abetting: Common Purpose. Where an assault and battery are committed upon a person by several others, all persons present and participating words, gestures, signs or looks are aiders and abettors, provided they act with a common purpose to inflict bodily harm upon the person assaulted and are liable to such person in damages for the injuries inflicted. In an action for damages caused by assault and battery by the defendants, instructions embodying the above principle are discussed and approved.

2. ———: Self-Defense: Interference of Third Party. A third person may interfere on behalf of one assaulted and use force to prevent bodily harm to him under the same circumstances and to the same extent only as the person assaulted, himself, might use.

3. ———: ———: ———. In an action for damages for assault and battery upon the plaintiff, a street car conductor, by several defendants, who were passengers, where the evidence showed that the plaintiff struck a number of his assailants with a cashbox, inflicting injury upon them, but in the progress of the fight retreated from the center to the end of the car, one of the number could not have been justified in then striking him with a beer bottle in order to prevent bodily harm to the others, and an instruction embodying that theory of defense was properly refused.

4. ———: ———: Beginning the Quarrel. One who is assaulted may become a wrongdoer by persisting in the affray and injuring his assailant after the latter has desisted, and under the cricumstances, though the plaintiff may have begun the fight,

it was .not a defense to his action for damages if the injuries were inflicted by the defendants while he was backing away and trying to escape them.

5. ———: Instruction: Commentary upon Evidence. In such case, an instruction which told the jury that the mere fact of defendants having carried beer bottles and attempted to drink beer on the car was not of itself wrongful or offensive conduct, was properly refused as a commentary upon the evidence.

Appeal from St. Louis County Circuit Court.—*Hon. John W. McElhinney,* Judge.

AFFIRMED.

*Thos. B. Harvey* and *R. Lee Mudd* for appellants.

(1) The refusal of appellants' instruction numbered 6 on the question of the conductor's arousing and further precipitating the fight against him by his commission of willfully, criminal or tortious acts of personal excessive violence, instead of mere contributory negligence, was the ignorment of a principle of distinction well recognized in law, and was fatally injurious to the appellants' rights, more especially when this defense of contributory positive wrong was specifically pleaded. Besenedker v. Sale, 8 Mo. App. 214; Beach on Contributory Negligence (2 Ed.), sec. 47; 1 Lawson's Crim. Defs., pages 723 and 724. (2) The principle of this instruction leads on into the question of becoming the aggressor, by voluntarily pursuing the fight, and with excessive violence provoking greater violence in turn, and thus shows also, as we now contend, that there was fatal error in refusing appellants' instruction numbered 8, on the conductor's excessive violence, and thus, by further contributory wrong, becoming the aggressor before he was struck. Callahan v. Billat, 68 Mo. App. 438 and 439; Elliott v. Brown, 2 Wend. (N. Y.) 497. Such excessive violence gave appellants the right to use similar violence on him with impunity. State v. Culler, 82 Mo. 632; Pattison's Criminal Instructions, pages 402, 412

and 413; State v. Talmadge, 107 Mo. 560, 17 S. W. 990; State v. Higgerson, 157 Mo. 395, 57 S. W. 1014; Morgan v. Durfee, 69 Mo. 471; White v. Maxey, 64 Mo. 556. (3) The refusal of appellants' instruction numbered 5 denied the right of one member of a social company to defend another from great bodily violence. This right is now well recognized, whether the person defended was of kin to the other, or a master or servant, or simply some third person. Kerr on Homicide, sec. 168; 1 Lawson's Crim. Defs., page 750; State v. Totman, 80 Mo. App. 127. (4) The court's striking out of parts and refusal of instructions asked by appellants showing what was and what was not "acting in concert," as with "a common design," as in appellants' instruction numbered 3, and their refused instruction numbered 4, and inserting in the instruction numbered 3 merely the words "encouraging or inviting him, by their conduct to act with them in doing bodily harm to the plaintiff," was clear error, and too sparse a definition in its stead under all the circumstances. McManus v. Lee, 43 Mo. 208; State v. Hickam, 95 Mo. 332, 8 S. W. 252; Murphy v. Wilson, 44 Mo. 320; Morgan v. Durfee, 69 Mo. 479.

*Collins & Chappell* for respondent.

The appellants Fox and McConnell are liable for the injuries inflicted upon the respondent by Robert J. Humber. Both of the defendants and said Humber were actually and actively engaged in attempting to beat the respondent. Humber succeeded in striking the blow. They were all the principals in the eye of the law. All who counsel, aid or assist in any way the commission of a wrong are as much principals as he who actually inflicts the blow. Canifax v. Chapman, 9 Mo. 175; Pallo v. Freeman, 19 Mo. 421; Thomas v. Warremeyer, 34 Mo. 665; Alfred v. Bray, 41 Mo. 484; Murphy v. Wilson, 44 Mo. 313; Willi v. Lucas, 110 Mo. 219, 19 S. W. 726; State v. Valle, 164 Mo. 539, 65 S. W. 232.

STATEMENT.—The action is for damages arising out of an assault and battery alleged to have been committed on July 26, 1902. The plaintiff was a conductor in charge of an electric car of the St. Louis, St. Charles & Western Railway Company, enroute from the city of St. Charles to St. Louis, Missouri. On the night of the occurrence, a party numbering about fifteen men of the Planing Mill Men's Association had been spending the evening at the residence of a friend, who was also a member of the association, about two miles west of the city limits. The party had purchased in the city and caused to be transported to the suburban home of their friend, several barrels of bottled beer and soda water, together with a supply of sandwiches, etc., and proceded to such suburban home as a surprise party early in the evening; whereupon a table was laid and a luncheon had upon the lawn and an enjoyable evening was spent by all concerned. Some drinking of soda and beer was indulged in. About 11:30 p. m. the party of fifteen boarded the car on which plaintiff was a conductor, for their homes in the city. All the evidence shows that four or five of the party had bottles of beer in their possession and some were in the act of drinking when boarding the car. They were quite jolly. On the part of plaintiff it was shown that defendant McConnell and others were drinking and throwing or spilling beer in the car;. that the plaintiff conductor quietly remonstrated with them therefor, saying: "Please do not throw beer around the car," and that it was against the rules of the company to permit drinking therein, requesting that they desist their boisterous conduct. There were twelve or more passengers aside from the party of mill men. Upon this first request of the conductor, the party desisted momentarily but only to commence again, and the conductor made the same remonstrance a second time; whereupon defendant McConnell inquired what the conductor would do if they did not behave, and the conductor answered that he

would stop the car and put them off. To this McConnell
answered: "One of you put all of us off?" The con-
ductor replied that if he could not do it he would stop the
car and procure assistance. McConnell answered: "We
don't know whether you could or not." A gentle man of
the party then said to the conductor: "It is all right;
I will see that they behave." Thereupon the conductor
rang the bell and started the car which he had caused
to be stopped during the conversation and returned to
the end of the car, taking up his small iron cashbox
which he carried in which to deposit or permit the pas-
sengers to deposit fares as collected, and returned to col-
lecting car fares. The gentleman who had promised the
good behavior of the party, commenced placing the fares
in the box held by the conductor when some of the party
again became boisterous and commenced cursing and act-
ing rude. The conductor turned around and said: "I
thought you gentlemen were going to behave if you are
going on," and at that time one Menown, sitting in the
rear of McConnell and one of the party, said: (quoting
from the conductor's testimony) " 'Let me to the s— of
a b——; I will settle him,' and he got up and sprang at
me with his fist and I threw my head back like that and
hit him with my left hand, and there were two sitting in
the seat—McConnell and I don't know which one of the
others was sitting to my right and one of those struck
me with his fist here and it kind of knocked me back
and by that time there were five or six others all hitting
at me and I got back and two or three beer bottles went
through the front window and one through the side win-
dow of the car and they crowded me back in the car and
I was laying down in the corner and had my legs over
the seat this way, and a beer bottle struck me here —
some fellow reached over the crowd and struck me with
a beer bottle in his fist on the right side of the head."
In this battery, the two defendants were active partici-

pants. The testimony of the plaintiff and his witnesses tends to show that the parties, after making this joint assault upon the conductor, crowded him backwards into the corner of the car, knocked him down on the floor and across the seat and inflicted severe injuries upon him with cut glass from the beer bottles and otherwise, with which they struck him, severely injuring his head and hand; that a number of the car windows were broken out by the throwing of the beer bottles through the same; that beer was thrown all over the car and a box full of broken glass was picked up from the floor after the melee; that while this battery was being perpetrated upon the plaintiff, Menown ran to the rear of the car, pulled the trolley off the wire, turned out the lights, and enveloped the entire scene in darkness. The motorman, hearing the affray, opened the front door of the car, dragged the conductor out from under his assailants and off of the car in order, as he supposed, to save his life. While this assault was going on, however, the conductor was persistently fighting back as best he could, with his iron cashbox, striking right and left at his assailants who were following him, and thereby inflicting serious injury upon several of their number.

The testimony on behalf of the defendant, however, tended to show the altercation by words as above detailed and that instead of Menown first assaulting the conductor, that the conductor commenced the assault by striking at Menown with his cashbox, missing him and striking young Fox, a son of the defendant Fox, in the head therewith and inflicting severe injuries, and from this on, struck right and left with his cashbox at various members of the party as they arose out of their seats to overpower him; that in fact the conductor committed the assault first with the cashbox — being provoked by the wordy war first had, and that all of the injuries which were inflicted upon him by the mill men were done in defense of members of their party who were being assaulted by the conductor with the cashbox; that the only

person who struck the conductor with a beer bottle was one Humber, a member of the mill men's party, who reached over the crowd while the conductor was backing, and still fighting with his cashbox, and hit him over the head with the beer bottle and thereby breaking it; that Humber did this in defense of his associates on whom the conductor was then using his cashbox while retreating from the assault.

On the trial before a jury, the finding was for the plaintiff and a substantial recovery was allowed in actual as well as punitive damages.

The defendants requested and the court very properly refused a peremptory instruction to find the issues for the defendants.

On the part of the plaintiff, the court instructed the jury, first, to the effect that the plaintiff, as conductor, had the right, and it was his duty, to remonstrate against offensive and disorderly conduct on the car, and that if defendants persisted in such conduct, he had the right to order such of them as persisted therein, from the car, and if necessary, to eject such person or persons; and further, that any words used by plaintiff in requesting them to desist from such conduct or in threatening to eject them from such car if they persisted in being rude, was no justification for an assault upon the plaintiff. And further, on plaintiff's behalf, the court instructed as follows:

"2. If the jury believe from the evidence that the defendants or either or them, either alone or with other persons present at the time, all acting in concert together, with the same common purpose or design, assaulted the plaintiff while the plaintiff was discharging his duties as a conductor in the employment of the St. Louis, St. Charles & Western Railroad Company and in charge of said company's car, and that while engaged in so assaulting plaintiff the defendants, or either of them, or anyone or more of such persons, if any, present at the time and acting in concert as above explained with

the defendants, or either of them, did strike or beat the plaintiff over his head or his hand or both with a beer bottle and that such assault, striking and beating were so made on the plaintiff without just provocation, then you will find a verdict in favor of the plaintiff and against the defendant or defendants making such assault."

The third instruction for the plaintiff deals with the measure of actual and submits the question of punitive damages. It is not criticised. The fourth instruction properly defined the words "malice," "maliciously," and "wanton." The fifth deals with the question of burden of proof, and the sixth, with the credibility of the witnesses. The seventh and eighth instructions are unimportant.

On the part of the defendants, the court instructed as follows:

"1. The jury are instructed that before you may find that the defendants are responsible for the striking and injury of the plaintiff with the beer bottle in question, the facts going to show such responsibility must be proven by a preponderance of the evidence; which means that the credibility and value of the evidence in favor of the plaintiff Brouster must, according to the jury's estimation, outweigh the matters of evidence in favor of the defendants; and now, if upon a consideration of all the facts and circumstances in the case, the jury believe that the evidence preponderates more in the favor of the defendants than for the plaintiff, or that the evidence in their favor is as strong and convincing as all the evidence against them; then it is your duty to render a verdict for the defendants."

The defendants requested their second instruction in the following language:

"2. The court further instructs the jury that, although a railroad conductor may put persons out of a car for their behaving in an offensive manner, yet offensive behavior or conduct, however, we mean not what

may be offensive to the tastes, or sentiments of some
one person particularly, but such conduct as the jury
may consider would be offensive to ordinarily sensible
and reasonable persons, if on said car at such time
under similar circumstances.    (*The mere facts of the
defendants having carried bottles of beer in their pockets
or hands, and attempting to drink beer on said car, would
not in itself, be regarded in law as wrongful or offensive
conduct*), nor would the mere fact that the conductor
himself took offense at such action show their conduct to
have been wrongful, or offensive behavior, but the jury
must consider and determine this in the light of all the
facts and circumstances in the case.    There is, however,
no evidence in this case to show that the carrying of bot-
tles of beer and drinking the same on the street car in
question, was a violation of any rule of the railroad com-
pany."

The court modified the same by striking out the
words in italics and gave the same as modified.    This
modification is one of the errors complained of.

Defendants requested their third instruction in the
following language, except the words in parenthesis.
The court modified the same by striking out the words
italicized, "to do, or cause the plaintiff such same or
similar injuries, which said third person did to him,"
and inserting in lieu thereof the following: "or encour-
aging or inviting him by their conduct to act with them
in doing bodily harm to the plaintiff," so that the same,
as modified and given by the court by inserting the words
in parenthesis and striking out those in italics, reads as
follows:

"3.    The jury are instructed that, when you are
instructed in other instructions herein that the defend-
ants may be held liable for some other person's act of
striking the plaintiff, if they acted in concert with said
other person, or acted with a common design with such
other person, it is not meant by this that they may be
held responsible merely because they may have been in-

tending to fight or strike the plaintiff in some way, at the time said other person was in the act of striking him with a beer bottle; but by this acting 'in concert' or with a 'common design,' it is meant that, when the said third person struck the plaintiff with a beer bottle with a design or intention to do him bodily harm thereby, the defendants or some one or more of them, had an understanding with such other person in his plan or purpose, or were acting with him with knowledge of his said purpose (or encouraging or inviting him by their conduct, to act with them in doing bodily harm to the plaintiff) *to do, or cause the plaintiff such same, or similar injuries, which said person did to him;* and unless you first believe from the evidence that this was in truth the fact, you will not be justified in finding against the defendants on the ground that they acted in concert with such other person in causing such injury."

This modification is complained of as error.

At the defendant's request, the court gave the following instruction:

"4.   The court instructs the jury, if you believe from the evidence that some third person, and not any one of the defendants, came up and struck the plaintiff with a beer bottle, after a fight or struggle, between some of the defendants was going on; then the mere fact that any one or more of them took part in such fight, or difficulty, is not sufficient to make any of them responsible for the striking done by such other person; and under such circumstances, neither of these defendants can be lawfully held liable for such striking, on the theory that they acted in concert with that person, unless the jury believe from all the evidence that such one or more of the defendants, had, together with such third person, at that time, a common purpose to do some injury to the plaintiff by striking him, or had knowledge of said other person's said intent to strike and injure him; and they, or some one or more of them, did then some act of assistance or encouragement in furtherance of such pur-

pose or intent of that person to strike and injure the plaintiff; and unless you either believe these facts to be true, or believe the striking was done by some of the defendants you cannot lawfully find a verdict for the plaintiff."

The defendants requested each of the following instructions and the court refused the same:

"5. The court instructs the jury that the mere fact that any one or more of the defendants attempted to seize or strike the conductor in the interest or behalf of another person, and not in defense of himself, personally; or the mere fact of their continuing to do so while the conductor was backing, does not, of itself, make them responsible for the actual striking of the conductor with the beer bottle; but, if you believe the evidence shows that the defendants and certain other persons, and the party who struck the conductor were a social company together on said car, they had the same right to protect or defend each other from any great bodily harm, as each had to defend himself; and, if the jury now believe from the evidence that, just before, and at the time the conductor was struck with the bottle, he himself was striking in different directions at said persons, with his box and using more force than was reasonably necessary under the circumstances, as explained in the other instructions herein, and thereby placing some of said other persons in immediate danger of great bodily harm, any member of said company had the right to use such force and to follow him up to such an extent as fairly and reasonably appeared to him, from all the facts and circumstances to be necessary, to prevent him from further so striking any of said parties; and, in so doing he had the right to act upon appearances from his own standpoint, and he was not bound to act at his own risk of bodily injury, and not bound to correctly decide or measure the exact force necessary to stop said conductor from continuing such striking."

117 App.—46

"6.    The court further instructs the jury that, in considering and deciding as to who caused or provoked the difficulty, and consequent fight, in which the car in question was injured, you are not to regard any mere words or quarreling of any of the defendants that may have occurred on said car before said fight took place, as any sufficient cause or provocation for the conductor's assaulting or striking them, or either of them, or anyone else, if he did so do; nor would the conductor have any just provocation for striking, or even striking at any of said parties in such manner as likely to do great bodily harm to any of them, even if they were approaching or rushing at him, unless they were doing so in such manner as gave him a reasonable cause to fear some great bodily harm from them; and now, if the jury are reasonably satisfied from all the evidence that the conductor began striking at and striking any one or more of the defendants with his cashbox, when he did not in fact have a reasonable cause to believe they, or any of them were about to do him any great bodily harm; and that, in this way, he himself gave the provocation which brought on a struggle and fight between himself and the defendants; and that the injuries which he received were done under these said circumstances, then the conductor himself became the aggressor and responsible for provoking said fight; and your verdict should then be for the defendants."

NORTONI, J. (after stating the facts).—1. It is insisted that the court erred in modifying appellants' instruction by striking out the words, "to do or cause to plaintiff such same or similar injuries which said third person did him," and inserting in lieu thereof the words, "or encouraging or inviting him by their conduct to act with them in doing bodily harm to the plaintiff." It is a well-settled principle that all persons, present and participating in an act of this nature, by either words of counsel and advice or gestures, looks or signs, or who

may in any way, or by any means, countenance and approve the same, are in law deemed to be aiders and abettors and liable as principals for such tortious acts. [Cooper v. Johnson, 81 Mo. 483; State v. Orrick, 106 Mo. 11, 17 S. W. 176, 329; Canifax v. Chapman, 7 Mo. 175; Page v. Freeman, 19 Mo. 421; Allred v. Bray, 41 Mo. 484; Murphy v. Wilson, 44 Mo. 313; McMannus v. Lee, 43 Mo. 206; Willi.v. Lucas, 110 Mo. 219, 19 S. W. 726; Thomas v. Werremeyer, 34 Mo. App. 665; State v. Valle, 164 Mo. 539, 65 S. W. 232; State v. Gooch, 105 Mo. 392, 16 S. W. 892.] And a party may be charged with doing an act himself and held liable under such charge for being present and aiding and abetting the doing of the same. [Willi v. Lucas, 110 Mo. 219; State v. Valle, 164 Mo. 539; Murphy v. Wilson, 44 Mo. 313; Page v. Freeman, 19 Mo. 421.] And it is not necessary to prove such advising, counseling, aiding and abetting by positive and direct evidence, but such fact, like any other, may be established by circumstances. [State v. Gooch, 105 Mo. 392; Willi v. Lucas, 110 Mo. 219; State v. Valle, 164 Mo. 539.] On the other hand, one person cannot be held for the act of another in the commission of such trespass as aider and abettor or counselor and adviser unless there was a common purpose in the minds of the person sought to be held and the third party to inflict bodily harm on the complainant. [State v. Hickam, 95 Mo. 322, 8 S. W. 252.] Under the principle stated, there could be no doubt that Humber, the third party, who, according to defendants' testimony, inflicted the blow with the beer bottle, could be held either as principal or as aider and abettor. But the precise question presented here is not the liability of Humber, the third party, but it is, Can appellants be held for the wrongful act of Humber in their defense on the theory submitted in the amendment to the instruction; that is, that they were "encouraging or inviting him by their conduct to act with them in doing bodily harm to the plaintiff?" On this question there seems to be no doubt. Had ap-

pellants then and there "encouraged or invited" Humber by express words to interpose the blow complained of, no one could argue that they would not be liable for the consequences of his act in response to such invitation or encouragement and concert of action and common purpose would thereby be established beyond peradventure. Such concert of action being established as well by circumstances as any other fact, the case stands now as having been conclusively established to the effect that such appellants invited and encouraged Humber to strike the blow which involved common purpose and concert of action to the same effect; that is, to inflict "the same or similar injuries," in the language rejected from the instruction by the court, of which complaint is made. The question presented is not identical with that in State v. Meyers, 174 Mo. 353, 74 S. W. 862, relied upon by appellants, where the third party voluntarily assumed to defend one being assaulted and for his wrongful act the person assaulted was afterwards convicted and such conviction set aside in the Supreme Court. In that case, there was no evidence, either positive or circumstantial, tending to show a concert of action, the third party being a volunteer; whereas in the case at bar, the record abounds with such evidence tending to show a concert of action, and by the amendment to the instruction, the jury were virtually directed that if they found the appellants encouraged or invited Humber to strike the blow, this was in effect equivalent to, and in fact, was an act in concert and common purpose for which appellants were responsible. In this connection, it is proper to further direct attention to the matter of common purpose as pointedly put to the jury from appellants' standpoint in their fourth instruction, as follows: "Neither of these defendants can be lawfully held liable for such striking, on the theory that they acted in concert with that person, unless the jury believe from all the evidence that such one or more of the defendants had, together with such third person, at that time, a

common purpose to do some such injury to the plaintiff by striking him, or had knowledge of said other person's said intent to strike and injure him; and they, or some one or more of them, did then some act of assistance or encouragement in furtherance of such purpose or intent of that person to strike and injure the plaintiff." This instruction submits the question of acting with a common purpose and in concert squarely to the jury, and in view of these considerations, there was certainly no error in modifying the instruction complained of.

2.  It is insisted that the court erred in refusing appellants' fifth instruction, which involved the principle that one member of a social party has the right to interpose in the defense of a felonious assault being made upon another.  This instruction was predicated upon the testimony of the defendants to the effect that while the affray was in progress, Humber, a member of the party other than appellants, ran in and dealt respondent a blow on the head with a beer bottle which caused his most serious injury.  There is no special principle applicable to the social company mentioned in the instruction any more than is applicable to the case of third parties generally.  The principle sought to be invoked is that when great bodily harm is about to be inflicted by one person upon another, a third party is justified in exerting necessary force commensurate with the circumstances in preventing such threatened injury, in a proper case.  There can be no doubt that this is a wholesome and salutary principle of the criminal law and on a proper state of facts, is applicable as well in a civil suit of the character of the case at bar.  But the principle itself has its necessary and concomitant limitation; that is, that the party in whose favor, or in preventing an injury to whom, the third party interposes, must not be so at fault himself as to forfeit his right to use the same force as is exerted in his behalf by the third person.  Indeed, the principle is correctly stated by this court in an early case, where it is said:

"Whatever one may do for himself, he may do for an-
other." [State v. Foley, 12 Mo. App. 431.] And is thus
conversely stated by an eminent authority (Kerr on
Homicides, 1891, sec. 168) : "It is well established that
what one may do in his own defense, another may do
for him, if he believes life is in immediate danger, or if
such danger and necessity be reasonably apparent, pro-
vided the party in whose defense he acts was not in
fault." This is certainly the correct doctrine on the sub-
ject, for it cannot be said that a third party can inter-
pose and be justified in striking a blow in defense of
another that would not have been justifiable if delivered
by the party for whose defense it was leveled. The
authorities are abundant. [Horrigan & Thompson's
Cases on Self Defense, 750; State v. Totman, 80 Mo.
App. 125; State v. Reed, 137 Mo. 125, 38 S. W. 574; 1
Kerr on Homicides, 1891, sec. 168.] Applying the prin-
ciple to the case before the court, it then becomes nec-
essary to inquire whether or not appellants themselves
would have been justified in inflicting the blow with the
beer bottle under the facts as developed. It will be
noted that the instruction says (under the circumstances
therein predicated) : "Any member of this company had
the right to use such force and *to follow him up to such
an extent* as fairly and reasonably appeared to him from
the facts and circumstances to be necessary to prevent
him from further so striking any of said parties," etc.
The instruction, when construed in the light of the prin-
ciple stated and the facts of the case, implies that the
appellants themselves had the right to "*follow him up*"
and inflict the blow with the beer bottle when he was
retreating and no blow was necessary in their further
defense, for had they declined to follow his retreat, they
would have been in no danger from blows from the re-
tiring conductor's cashbox and no blow from the beer
bottle would have been necessary. It is well settled, and
reason indicates, that the right of self-defense does not
imply the right of attack. Indeed, all of the evidence

shows that the conductor retreated from near the center of the car, striking right and left with the cashbox while the appellants and a number of their companions were advancing, following and beating him. They certainly would have no right to "follow him up" and inflict the blow with the beer bottle and claim justification on the theory of self-defense, as the jury would have been so instructed had the court acceded to their request. The appellants themselves were at fault in following him, according to the language of the instruction, and they being at fault, their associate, Humber, who is alleged to have struck the blow, had no right to follow him up and strike the blow in their defense which would have been wrongful if struck by them. The court properly refused the instruction.

3. The answer pleaded that whatever injuries were received by the respondent were occasioned through his voluntarily bringing on the quarrel by his offensive language and conduct in striking the first blow, and in furtherance of this plea, appellants' evidence tended to show that the respondent, while striking at Menown, struck young Fox, son of one of the appellants, the first blow with the cashbox and thereby inflicted a severe wound upon him, and continued, while retreating, to strike right and left with the box at members of the party, and that it was in defense of themselves and their associates the injuries were inflicted upon him. All of the evidence for appellants, however, as well as from the respondent's witnesses, tends to establish and in fact does establish indisputably that the respondent retreated from the center to the extreme end of the car and until he could retreat no further. All of his injuries were inflicted while he was in the act of retreating and finally in a prostrate condition in the corner of the car with a number of the party beating him and others endeavoring so to do.

The sixth instruction, requested by appellant and refused by the court, predicated on this feature of the

case; that is, upon the theory that respondent provoked the difficulty; and, it seems to be a fair declaration of law ordinarily in such cases, but it ignores the well-settled principle that when one brings on a difficulty and his assault is met with more force than is necessary for its proper defense, then the person assaulted may become the wrongdoer *ab initio*. Sir William Blackstone, in speaking of a slayer who has himself begun the combat and then retreated, says: "Having begun, endeavors to decline any future struggle and afterwards being closely pressed by his antagonist, kills him to avoid his own destruction, this is homicide excusable by self-defense." [4 Blackstone Com., 184.] And this doctrine is quoted and approved by our Supreme Court in State v. Partlow, 90 Mo. 608, 4 S. W. 14, where the doctrine is laid down that although one may be in the wrong in the first instance by bringing on the difficulty, yet a space for repentance is always open, and where he withdraws as far as he can from the combat in good faith and his adversary still pursues him, then if taking life becomes necessary to save his own, he will be justified. The doctrine is well stated in 1 Horrigan & Thompson's Cases on Self-Defense, at page 724, as follows: "The rule is well stated in a case in Tennessee. 'Cases may occur where the plaintiff brings on the difficulty, and the defendant, in the first instance acted lawfully, but afterwards, by an unnecessary degree of violence, become the trespasses *ab initio*. In cases of assault and battery, both parties may be guilty of a breach of the peace, and liable to indictment; but a civil action cannot be brought by each against the other. The plaintiff may have been the aggressor. Yet if the defendant had used not only more force than was necessary for his self-defense, but had unnecessarily abused the plaintiff, he cannot, in a civil action, recover damages, but must pay damages.'" [Chambers v. Porter, 5 Coldw. 282; Besenecker v. Sale, 8 Mo. App. 211.]

In view of the fact that all of the injuries were

Brouster v. Fox.

inflicted on respondent while he was retreating, it appears that this well-settled principle is peculiarly applicable on appellants' theory of the case and that the instruction requested should have incorporated it in such manner that the question would have been fairly submitted to the jury, that if respondent made the first assault, then he could not recover unless his injuries were inflicted by appellants while employing more force than was necessary in the proper defense of themselves and their associates, for on the record before us, appellants were entitled to the verdict only upon condition that they did not employ unnecessary force under the circumstances and pass beyond the right of legitimate defense of themselves and companions and into the unwarranted realm of wrongful chastisement. The mere fact that he had assaulted some of the parties and retreated, could afford no right for a number of the party to follow up and assault him in return. This would not be self-defense, nor would it be in defense of another; but, on the contrary, savors more of revenge. Indeed, while he was in the act of assaulting members of the party, they would have the undoubted right to use proper force to prevent such assault, but the use of force to prevent an assault is quite different from following up for the purpose of chastisement. We are persuaded that inasmuch as the instruction ignored this pertinent principle introduced from appellants' evidence and upon their theory of the case, that the court did not err in refusing the instruction as asked.

4. The court modified appellants' second instruction by striking therefrom the words: "the mere fact of defendants having carried bottles of beer in their pockets or hands and attempted to drink beer on said car would not of itself be regarded in law as wrongful or offensive conduct." The modification by striking out the words quoted, was no error. The court would not be justified in instructing the jury that such conduct was no offensive nor would it have been justified in instructing that,

of itself, it was offensive. It was purely a question of fact. Such conduct might have been offensive to numerous persons on the car and it might not have been. It was certainly not a question of law with which the court could deal as such. The evidence discloses that a passenger complained of it to the conductor before he remonstrated in the first instance, and if this be true, it was no doubt offensive at least to that passenger. It was a proper fact in evidence to be considered by the jury without comment from the court.

It is unnecessary to prolong the opinion by a separate discussion of the several remaining assignments of error. Those with which we have dealt are the more important and upon which the learned counsel have laid particular stress. Upon examination, we are of the opinion that there is no reversible error in the record. The case seems to have been well tried by the court and counsel. Upon the record, the judgment is for the right party. It should be affirmed and it is so ordered. *Bland, P. J.,* and *Goode, J.,* concur.