HENRY L. SCHAFER, Respondent, v. HENRY OSTMANN, SR., Appellant.

St. Louis Court of Appeals, April 8, 1913.

1. ASSAULT AND BATTERY: Concert of Action: Sufficiency of Evidence. In an action for damages for an assault, evidence *held* sufficient to show that defendant and his sons acted in concert in assaulting plaintiff.

2. ———: ———: Acts Constituting. While the mere presence of one at the time an assault is made will not render him guilty of the assault, nevertheless if he is ready to aid, if nec-

essary, or encourages or actually aids, the principal offender, he is equally as guilty as the latter.

3. ——: ——: **Liability for Acts of Other Participants.** A father who, in concert with his sons, assaulted another is responsible, in an action against him for damages, for the injuries inflicted by his sons.

4. **DAMAGES: Assault and Battery: Amount of Recovery.** In an action for damages for an assault, where it appeared that plaintiff was a partial cripple, and that defendant, with his sons, assaulted and brutally beat him, inflicting severe and painful injuries, an award of $1200 actual and $1200 punitive damages was not excessive, in view of the fact that defendant was worth at least $60,000.

5. ——: ——: **Punitive Damages: Evidence.** In an action for damages for assault and battery, evidence of the financial condition of the defendant is admissible on the issue of punitive damages.

Appeal from Lincoln Circuit Court.—*Hon. James D. Barnett,* Judge.

AFFIRMED.

*B. R. Brewer* and *Watts, Gentry & Lee* for appellant.

(1) The court erred in giving instructions numbered 4 and 7 at the request of the plaintiff. The vice of these instructions is that they permit plaintiff to recover against defendant, Henry Ostmann, Sr., not only for injuries inflicted by him, upon the plaintiff, but also for injuries inflicted by William Ostmann. This is not the law, unless there was evidence of their acting in concert. Schafer v. Ostmann, 148 Mo. App. 650; State v. Meyers, 174 Mo. 352; 2 Words and Phrases Judicially Defined, p. 1386. There was no evidence upon which to base these instructions, since the evidence wholly failed to show any concert of action between William Ostmann and the defendant, Henry Ostmann, Sr. Since there was no evidence upon which to base these instructions, the

giving of the instructions was error. State ex rel. v. Dieckmann, 124 Mo. App. 653; Marr v. Bunker, 92 Mo. App. 651; State v. Morrow, 164 Mo. 513; Railroad v. Railroad, 118 Mo. 599; Haworth v. Railroad, 94 Mo. App. 215. (2) The verdict is excessive because it is apparent, from the amount of it, that it includes compensation for injuries inflicted by William Ostmann upon the plaintiff, for which injuries defendant, Henry Ostmann, Sr., was in no way liable. Eliminating those injuries inflicted by William Ostmann, the other injuries sustained by plaintiff were so trivial that a verdict of $2400 for such trivial injuries would be shocking. Mitchell v. United Railways Co., 125 Mo. App. 1.

*R. H. Norton, Avery, Young & Killam* and *Theodore C. Bruere* for respondent.

(1) All who are present aiding and abetting those who actually commit the offense are principals. The appellant is liable for the injuries inflicted upon respondent by his son William Ostmann. The appellant and William Ostmann were actually and actively engaged in assaulting respondent and it is immaterial which of them inflicted the wound or struck the blow, inasmuch as the law imputes the injury given by one as the act of the other. State v. Ostmann, 147 Mo. App. 422; State v. Dalton, 27 Mo. 13; State v. Walker, 98 Mo. 95; State v. Nelson, 98 Mo. 414; State v. Orrick, 106 Mo. 111; State v. Johnson, 111 Mo. 578; State v. Brown, 104 Mo. 365; State v. Hermann, 117 Mo. 629; State v. Gooch, 105 Mo. 396; State v. Valle, 164 Mo. 543; Murphy v. Wilson, 44 Mo. 318; Willie v. Lucas, 110 Mo. 220; State v. Ruck, 194 Mo. 431; Brouster v. Fox, 117 Mo. App. 722; Sec. 4898, R. S. 1909; 3 Cyc. 1033C; 3 Cyc. 1069C. (2) The verdict was not excessive and was amply sustained by the evidence. Canfield v. Fox, 59 Mo. App. 354; Nichols v. Nichols, 147 Mo. 407; Cody v. Gremmler, 121 Mo. App. 354;

Meyer v. Pohlman, 12 Mo. App. 567; Munter v. Bande, 1 Mo. App. 484; O'Donnel v. Transit Co., 107 Mo. App. 34; Lally v. Cantwell, 40 Mo. App. 49; Sedwick on Measure of Damages (5 Ed.), 708; 3 Cyc. 1109E.

ALLEN, J.—This is a suit by plaintiff, respondent here, for an assault and battery made upon him. The suit was instituted in the circuit court of St. Charles county, in 1905, against Henry Ostmann, Sr., appellant here, and his two sons, William Ostmann and Henry Ostmann, Jr. Thereafter the venue in said cause was transferred from the said circuit court of St. Charles county to the circuit court of Lincoln county, Missouri. A trial was had in the latter court, before the court and a jury, resulting in a verdict in favor of plaintiff against defendants Henry Ostmann, Sr., and William Ostmann, in the sum of $500 actual damages, and $500 punitive damages, a total of $1000, and judgment was rendered accordingly; plaintiff having in the meantime dismissed as to the other defendant, Henry Ostmann, Jr.

Thereupon the said defendants, Henry Ostmann, Sr., and William Ostmann, duly perfected their appeal from that judgment to this court, where the judgment was reversed and the cause remanded to the circuit court of Lincoln county for a new trial. [See Schafer v. Ostmann, 148 Mo. App. 644, 129 S. W. 63.] The cause again coming on to be heard in the circuit court, the plaintiff, in the midst of the trial, dismissed as to William Ostmann, leaving Henry Ostmann, Sr., as the only remaining defendant. This second trial resulted in a verdict in favor of plaintiff against said defendant Henry Ostmann, Sr., for the sum of $1200 actual damages and $1200 punitive damages, a total of $2400. Judgment was entered accordingly, and the defendant, Henry Ostmann, Sr., appeals.

The evidence shows that the plaintiff was assaulted by Henry Ostmann, Sr., March 8, 1904, on a public

highway in St. Charles county, about three miles north of the city of St. Charles; and there is evidence that William Ostmann, as to whom the cause was dismissed, participated in the assault. The plaintiff at the time lived upon a farm with his father in St. Charles county, and the defendant lived about one-quarter of a mile distant. William Ostmann was living with his father, and Henry Ostmann, Jr., lived on a near-by farm. Plaintiff at the time was a young man weighing about one hundred and twenty pounds and was somewhat crippled, having, as he testified, had the heel of his left foot mashed off in a land roller when he was quite small. Defendant was about fifty-two years of age, weighed about one hundred and eighty pounds, and was strong and vigorous. It appears that sometime prior to the day of the assault, plaintiff and Henry Ostmann, Sr., had had a controversy of some sort over a plow, and had also had trouble about a fence.

On the day of the assault, plaintiff met Henry Ostmann, Jr., in front of the latter's house, on a public road leading to St. Charles. The latter was looking down at a neighboring lake for ducks when plaintiff came up. Plaintiff bade him "good evening," and he in like manner spoke to plaintiff. Plaintiff asked him what he was doing, and he replied that he was looking at the Maries Croche Lake to see if he could see any ducks. While plaintiff and young Ostmann were thus talking in a friendly manner, Henry Ostmann, Sr., drove up in a spring wagon and stopped beside them. The latter was coming from St. Charles and told his son that he had bought some clover seed. The plaintiff then said: "Mr. Ostmann, what did you pay for it?" Thereupon appellant, with an oath, called plaintiff a dirty pup and said: "I don't want to talk to you."

From this point on, testimony as to how the assault began differs somewhat from that given by defendant and his two sons. Plaintiff testified that when

defendant addressed him in the manner stated above, he said to defendant, "I am no more pup than you are;" that thereupon defendant turned around in his wagon, again applied the same oath and epithet to plaintiff saying, "I have a notion to get out and fix you;" that plaintiff told him to get out if he wanted to, and that he couldn't scare him (plaintiff); whereupon defendant got out of the wagon, advanced upon plaintiff with further oaths and epithets, and attempted to strike him; that plaintiff threw up his hand, and defendant grabbed him by both wrists and threw him to the ground. Plaintiff testified that defendant then got on top of him, "straddling" him as one would a horse, and began beating him about the face and head; that he called upon defendant to desist and tried to shield his face as best he could with his hands and arms, but that defendant continued to beat him with both fists; that after a time defendant stopped beating him and began to search his pockets, and after doing so again started beating him, striking him a severe blow in the jaw, whereupon plaintiff called out to the others present, "For God's sake take this man off. Don't let him kill me."

About the time the trouble began, William Ostmann came up, and he and Henry Ostmann, Jr., as well as another son of defendant, were looking on. Plaintiff testified that, while defendant was still on top of him and beating him, William Ostmann kicked him in the face, just beneath his right eye, seriously and painfully wounding and injuring him, and that while he was trying to get up and get away from defendant, William Ostmann struck him on the head with a club, which rendered him unconscious; that during all of this time, until he became unconscious, defendant still continued to beat him, and that while he was unconscious, his brother, Leonard Schafer, drove up in a buggy. The testimony of both plaintiff and his brother was that the former was unconscious, and was lifted

to his feet by his brother, who spoke to him, shook him and blew in his face, before he regained sufficient consciousness to tell what had happened; that the brother started to assist him into the buggy, whereupon defendant approached plaintiff's brother with his fists clenched, called him a vile oath and said: "You are one of them and we will fix you too;" that plaintiff's brother thereupon asked defendant what reason the latter would have for wanting to injure him, and appellant again replied with a vile oath, "You are one of them too and we will fix you for it;" that thereupon plaintiff's brother got plaintiff into the buggy and drove away with him, not however before defendant had come around to the side of the buggy with clenched fists telling plaintiff with oaths and epithets that he ought to hit plaintiff in the face again.

Neither defendant nor his sons denied that the difficulty began substantially as described by plaintiff in his testimony. They admitted that, while defendant was seated in his wagon, plaintiff spoke to him very civilly, and that he replied in the manner mentioned above. They testified that plaintiff told appellant that the latter could not stand on the ground and call him a dirty pup; that thereupon defendant got out of his wagon and approached plaintiff, but that the latter then stepped back, and defendant started to get back into the wagon, but that plaintiff followed him and undertook to strike him, and that the fight began in this way.

From the record before us, however, it is very apparent that the defendant was the aggressor throughout; that, upon being asked a civil question, he replied with oaths and epithets, and then got out of his wagon to attack plaintiff. The evidence is undisputed that, after having thrown plaintiff to the ground, he got on top of him and brutally beat him for a long time. It is denied by appellant and his sons that William Ostmann kicked plaintiff in the face and struck him on the

head with a club while defendant was holding him
down and beating him. It does not appear, however,
that plaintiff could have received the severe cut and in-
jury under his eye, or the huge knot upon his head by
blows from a fist; and the jury doubtless disbelieved
the testimony of defendant and his sons in this re-
gard.

One Fordie Ellis who was a witness for plaintiff,
passed along the road while defendant was sitting up-
on plaintiff and beating him, and stopped and looked
on for a short time. He testified that one of the Ost-
mann boys had a club of some kind, though he didn't
see him strike plaintiff with it; that the latter called
out, "For God's sake man, take him off. Don't let
him kill me;" and thereupon one of the Ostmann boys
said to the witness, "Move on or else we will give you
some too;" that thereupon the witness left for the
purpose of getting some one to come and stop the trou-
ble.

For a reversal of the judgment below, appellant
urges that recovery cannot be had against him, for in-
juries inflicted by his son, William Ostmann, for the
reason, as it is claimed, that the evidence fails to show
any concert of action between appellant and said Wil-
liam Ostmann, in assaulting plaintiff. There is no
merit however in this contention. And as this is really
the only question before us, it is unnecessary to set out
the pleadings or the instructions. The petition sets
up facts, which, if true, would show that there was con-
cert of action between plaintiff and his said son, in
their joint unlawful assault upon plaintiff. The jury
were properly instructed as to this question; and there
was ample evidence to sustain the averments of the
petition.

Appellant relies upon State v. Meyers, 174 Mo.
352, 74 S. W. 862. That case however is no authority
for the proposition here asserted by appellant. There

a policeman was engaged in making an unlawful assault on defendant Meyers, and *in self-protection* the latter grabbed the officer and tried to hold him. Thereupon Meyer's companion grabbed the policeman's club and beat the latter with it, severely injuring him. It was held that the assault of the companion was a voluntary and independent act on his part, and that Meyers could not be punished therefor. The case is totally different from the one before us. Here both appellant and William Ostmann participated in an unlawful and brutal assault upon the plaintiff while he was helpless and unable to defend himself. The evidence shows that appellant, Henry Ostmann, Sr., held plaintiff down and beat him, while William Ostmann kicked him in the face and struck him with a club, appellant all the time continuing to beat him with his fists. It was further conclusively shown that William Ostmann had the club in question (which he claimed was a small paling from a fence) and that when the difficulty began, and before his father had struck plaintiff, he raised the club to strike plaintiff, if necessary. The evidence is very convincing that he and his father were acting in concert from the moment the trouble began. It also appears that the sons were ready to assault the witness, Fordie Ellis, in case he attempted to interfere, showing that all were acting in concert, and, in law, participating in the assault.

In the criminal prosecution for this assault, this court upheld the conviction of the appellant here and his two sons, William and Henry, Jr., holding that all were guilty as principals, and might have been convicted under an information charging all of them as principals in the first degree. [State v. Ostmann, 147 Mo. App. 422, 126 S. W. 961.]

While the mere presence of one at the time an assault is made will not render him guilty of the assault, nevertheless one merely ready to aid, if necessary, or encouraging or actually aiding the principal

offender is equally as guilty as the latter.    [3 Cyc. 1033; State v. Valle, 164 Mo. 543, 65 S. W. 232; Willi v. Lucas, 110 Mo. 220, 19 S. W. 726; Brouster v. Fox, 117 Mo. App. 711, 93 S. W. 318.]

There is ample evidence that appellant and his son, William Ostmann, were both engaged in the same unlawful act of assaulting plaintiff, both participating therein and with one common purpose. Appellant sat upon plaintiff and beat him with his fists, while William Ostmann kicked him and struck him with a club. That they acted in concert in inflicting the injuries in question upon plaintiff so plainly appears from this record, that we shall not pursue the subject further.

It is urged that the verdict is excessive, but this mainly for the reason that it is claimed that recovery cannot be had against the appellant for injuries inflicted by his son William Ostmann. However, some effort is made to convince us that the verdict is excessive in any event. This contention may be disposed of very briefly. The testimony, not only of plaintiff, but of physicians and other witnesses, shows that most severe and painful injuries were inflicted upon the plaintiff. In fact the assault was a most dastardly and brutal one. The amount allowed plaintiff by way of compensatory damages is, in our opinion, none too great. Nor do we think the punitive damages assessed against appellant, as a penalty for his wrongdoing, any too heavy. It was shown by the evidence that appellant was worth something over sixty thousand dollars—although he declined to tell how much personal property he owned. It was proper to take into consideration his financial condition in assessing punitive damages against him. And as we have said before, the evidence shows that appellant without provocation viciously assaulted this young man, who was unable to defend himself, and most brutally beat him, while appellant's son kicked him and struck him with a club while he was being held down by appellant. There is not the slight-

est justification for his conduct, but on the contrary it cannot be too strongly condemned. If appellant cannot curb his vicious and criminal propensities, he need not expect to escape the consequences of his unlawful acts.

We think the verdict well enough. The judgment is clearly right and should be affirmed. It is so ordered. *Reynolds, P. J.,* and *Nortoni, J.,* concur.